1

**SEDGWICK LLP**
EUGENE BROWN, JR., ESQ. (Bar No. 79824)

2

eugene.brown@sedgwicklaw.com
AMEE MIKACICH, ESQ. (Bar No. 146814)

3

amee.mikacich@sedgwicklaw.com
SUNNY S. SHAPIRO, ESQ. (Bar No. 221111)

4

sunny.shapiro@sedgwicklaw.com
333 Bush Street, 30th Floor

5

San Francisco, CA  94104-2834
Telephone:  415.781.7900

6

Facsimile:  415.781.2635

7

Attorneys for Defendant

8

MARKOU, LLC

9

**UNITED STATES DISTRICT COURT**

10

**NORTHERN DISTRICT OF CALIFORNIA**

11

12

**BATTLE CREEK STATE BANK,**

**Case No.**   3:16-cv-4984

13

                    **Plaintiff,**

14

            **v.**

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (DIVERSITY) AND DEMAND FOR JURY TRIAL**

15

**RC VENTURES, LLC, a Delaware limited liability corporation, aka RC VENTURES**

16

**GROUP, LLC, a Delaware limited liability corporation, and RC VENTURES GROUP**

17

**II, LLC, a California limited liability corporation; MARI #1, LLC, a Delaware**

18

**limited liability corporation, MARI SUSANNA DEMARSH, an individual;**

19

**MARI SUSANNA DEMARSH as Special Administrator and Executor of the ESTATE**

20

**OF MICHAEL REVELS CAYTON, MARI SUSANNA DEMARSH as Trustee of the**

21

**REVELS MICHAEL CAYTON TRUST, Dated August 2, 2014; MARKOU, LLC;**

22

**REVELS M. CAYTON MD, INC.; and DOES 1 THROUGH 20, inclusive,**

23

                    **Defendants.**

24

25

26

    **TO  THE  CLERK  OF  THE  UNITED  STATES  DISTRICT  COURT  FOR  THE**

27

**NORTHERN DISTRICT OF CALIFORNIA:**

28

PLEASE TAKE NOTICE THAT Defendant MARKOU, LLC ("Markou") hereby files this Notice of Removal under 28 USC §§ 1441, 1446 and Federal Rule of Civil Procedure 81(c) to remove to this Court the above-entitled action on the following grounds:

**STATEMENT OF FACTS ENTITLING DEFENDANT TO REMOVAL**

1.      On May 4, 2015, an action was commenced by Plaintiff Battle Creek State Bank ("Plaintiff" or "Battle Creek") in the Superior Court of the State of California in and for the County of Marin, entitled Battle Creek State Bank v. RC Ventures, LLC, a Delaware limited liability corporation, aka RC Ventures Group II, LLC, a California limited liability corporation; Mari Susanna DeMarsh, an individual; and Does 1 through 20, inclusive, Superior Court Case No. CIV1501631.  A true and correct copy of the unverified Complaint ("Complaint") is attached hereto as **Exhibit A.**

2.      On August 5, 2015, Plaintiff filed a First Amended Complaint naming additional parties with the caption then reading as Battle Creek State Bank v. RC Ventures, LLC, a Delaware limited liability corporation, aka RC Ventures Group, LLC, a Delaware limited liability corporation, and RC Ventures Group II, LLC, a California limited liability corporation; Mari #1, LLC, a Delaware limited liability corporation, Mari Susanna DeMarsh, an individual; Mari Susanna DeMarsh as the Special Administrator and Executor of the Estate of Michael Revels Cayton, and Does 1 through 20, inclusive. A true and correct copy of the First Amended Complaint is attached hereto as **Exhibit B**.

3.      On July 21, 2016, Plaintiff filed a Second Amended Complaint now, for the first time, naming moving party Markou, LLC and some additional parties with the caption now reading as Battle Creek State Bank v. RC Ventures, LLC, a Delaware limited liability corporation, and RC Ventures Group, LLC, a Delaware limited liability corporation, and RC Ventures Group II, LLC, a California limited liability corporation; Mari #1, LLC, a Delaware limited liability corporation; Mari Susanna DeMarsh, an individual; Mari Susanna DeMarsh as the Special Administrator and Executor of the Estate of Michael Revels Cayton; Mari Susanna DeMarsh as the Trustee of the Revels Michael Cayton Trust, Dated August 2, 2014; Markou. LLC; Revels M.

Cayton MD, Inc.; and DOES 1 through 20, inclusive.  A true and correct copy of the Second Amended Complaint is attached hereto as **Exhibit C**.

4.     The first date upon which Markou received a copy of the operative complaint was July 31, 2016, when Markou's agent for service of process, Registered Agent Solutions, Inc., received by process server the Summons, Complaint, and Marin County Case Management Information Sheet.  A true and correct copy of the Amended Summons To Second Amended Complaint is attached hereto as **Exhibit D**.

5.     Markou filed an answer to the Complaint on July 25, 2016.  A true and correct copy of the answer is attached hereto as **Exhibit E**.

6.     Based on the allegations of the Second Amended Complaint, Markou is informed and believes that Plaintiff Battle Creek State Bank was, at the time of the filing of this action, and still is, a Nebraska banking corporation with its principal place of business in Battle Creek, Nebraska.

7.     Based on the allegations of the Complaint, Markou is informed and believes that Defendant RC Ventures, LLC "aka RC Ventures Group LLC" was, at the time of the filing of this action, and still is, a Delaware limited liability corporation.

8.     Based on the allegations of the Complaint, Markou is informed and believes that Defendant RC Ventures Group II, LLC was, at the time of the filing of this action, and still is, a California limited liability corporation.

9.     Based on the allegations of the Complaint, Markou is informed and believes that Defendant Mari Susanna DeMarsh was, at the time of the filing of this action, and still is, resides in Marin County, California.

10.    Based on the allegations of the Complaint, Markou is informed and believes that Defendant Mari #1, LLC was, at the time of the filing of this action, and still is, a California limited liability company.

11.    Based on the allegations of the Complaint, Markou is informed and believes that Michael Revels Cayton "aka Revels Cayton" was an individual, now deceased, who at all times relevant hereto resided in the County of Marin, California until his death.

12.     Based on the allegations of the Complaint, Markou is informed and believes that Revels M. Cayton, M.D., Inc. was, at the time of the filing of this action, and still is a suspended California corporation.

13.     Defendant Markou was, at the time of the filing of this action, and still is a Nevada limited liability company.

14.     All appearing defendants Mari Susanna Demarsh, an individual; Mari Susanna DeMarsh as Special Administrator and Executor of the Estate of Michael Revels Cayton, Mari Susanna DeMarsh as Trustee of the Revels Michael Cayton Trust, Dated August 2, 2014; Markou, LLC are represented by Sedgwick LLP and have filed concurrently herewith a Consent to Removal.

15.     All other named defendants RC Ventures, LLC, a Delaware limited liability corporation, aka RC Ventures Group, LLC, a Delaware limited liability corporation, and RC Ventures Group II, LLC, a California limited liability corporation; Mari #1, LLC, a California limited liability company and Revels M. Cayton MD, INC., a suspended California corporation, have not appeared in the action.

## JURISDICTION

16.     As the appended record demonstrates, this action may be removed to this Court pursuant 28 U.S.C. § 1441(b) because this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the litigants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17.     It is facially apparent from the Second Amended Complaint that Plaintiff's claims for damages exceeds the jurisdictional amount of $75,000.  (Exhibit C, Second Amended Complaint, ¶¶ 19, 24, 34, 41, 46, 51, 58 and Prayer for Relief, page 12, line 13.)  (See Locket v. Delta Air Lines, Inc., 171 F.3d 295, 298 (5th Cir. 1999).

18.     According to the complaint, RC Ventures LLC borrowed $1,340,500.00 from Battle Creek in September 2008.  The loan was made pursuant to a Line of Credit Agreement and Promissory Note between Battle Creek and RC Ventures, LLC which was personally guaranteed by Revels Cayton.  RC Ventures LLC defaulted on the loan and ultimately entered into a written

**NOTICE OF REMOVAL AND DEMAND FOR JURY TRIAL**

Settlement and Release Agreement in November 2011 for repayment for the total principal sum of the original loan in equal monthly installments from December 2011 until full paid.  The loan installments were paid from December 2011 to January 2015.  (Exhibit C, Second Amended Complaint, ¶¶ 19, 22, 23, 24, 27, and 29.)

19.     Revels Cayton died on August 13, 2014.   (Exhibit C, Second Amended Complaint, ¶ 28.)  In February 2015 payments ceased and in May 2015 Plaintiff filed suit against RC Ventures LLC, RC Ventures Group II and Mari Susanna DeMarsh. (Exhibit C, Second Amended Complaint, ¶ 29.)  Over the next year Plaintiff twice amended the Complaint to name additional parties including Markou in the latest Complaint filed in July 2016.  (Exhibits B and C.)

20.     Plaintiff alleges that the action is an unlimited civil case and they seeks damages against defendants, including Markou, for the alleged outstanding loan balance of $1,103,552.67 which is an amount well in excess of the jurisdiction of the Marin County Superior Court unlimited civil matters. Plaintiff also seeks interest, cost incurred and attorneys' fees.   (Exhibit C, Second Amended Complaint, ¶ 34.)

21.     This removal is timely, having been made within thirty days of the service of the Summons and operative Complaint on Markou.  28 U.S.C. § 1446(b).

## INTRADISTRICT ASSIGNMENT

22.     Assignment to this Court is proper as the action is pending in Marin County Superior Court.

23.     The presence of Doe Defendants in this case has no bearing on diversity with respect to removal.  For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.  28 U.S.C. § 1441(a).

24.     Markou reserves the right to amend or supplement this Notice of Removal.

25.     All appearing defendants consent to this removal.  (See Lewis v. Rego Company, 757 F.2d 66; 68 (3rd Cir. 1985).)   None of the defendants contest removal.

26.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Clerk of the Superior Court of the State of California, in and for the County of Marin.

**NOTICE OF REMOVAL AND DEMAND FOR JURY TRIAL**

1    27.    Pursuant to 28 U.S.C. § 1446(d), Markou has served Plaintiff with a Notice to

2  State Court and Adverse Party of Removal to Federal Court and Jury Demand.

3    WHEREFORE, Defendant MARKOU, LLC hereby removes the action now pending

4  against it in the Superior Court of California, County of Marin.

5    ## DEMAND FOR JURY TRIAL

6
7    Pursuant to Federal Rule of Civil Procedure 38(b) Defendant Markou, LLC hereby

8  demands trial by jury of all issues appropriate for jury determination.

9  DATED:  August 30, 2016          **SEDGWICK LLP**

10

11

12    By: */s/ Eugene Brown, Jr.*
          Eugene Brown, Jr., Esq.
13        Amee Mikacich, Esq.
          Sunny S. Shapiro, Esq.
14        Attorneys for Defendants
          MARI SUSANNA DEMARSH, an individual;
15        MARI SUSANNA DEMARSH, as the Special
          Administrator and Executor of the ESTATE OF
16        REVELS MICHAEL CAYTON, erroneously sued
          as MICHAEL REVELS CAYTON; MARKOU,
17        LLC; and MARI SUSANNA DEMARSH as the
          Trustee of the REVELS MICHAEL CAYTON
18        TRUST Dated August 4, 2014

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



1  RALPH J. SWANSON, CA STATE BAR NO. 67751
   DAWN C. SWEATT, CA STATE BAR NO. 238005
2  BERLINER COHEN
   TEN ALMADEN BOULEVARD
3  ELEVENTH FLOOR
   SAN JOSE, CALIFORNIA 95113-2233
4  TELEPHONE: (408) 286-5800
   FACSIMILE: (408) 998-5388
5  ralph.swanson@berliner.com
   dawn.sweatt@berliner.com
6

7  ATTORNEYS FOR PLAINTIFF BATTLE CREEK STATE
   BANK

**FILED**

MAY 4  2015

KIM TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: E. Chais, Deputy

8          SUPERIOR COURT OF CALIFORNIA, COUNTY OF MARIN

9

10  BATTLE CREEK STATE BANK,                CASE NO. C I V  **1 5 0 1 6 3 1**

11           Plaintiff,                     COMPLAINT FOR

12      v.                                  1. BREACH OF CONTRACT
                                            2. FRAUDULENT TRANSFER
13  RC VENTURES, LLC, a Delaware limited    3. CONSTRUCTIVE TRUST
    liability corporation, aka RC VENTURES
14  GROUP, LLC, a Delaware limited liability
    corporation, and RC VENTURES GROUP II,
15  LLC, a California limited liability corporation;
    MARI SUSANNA DEMARSH, an individual;
16  and DOES 1 THROUGH 20, inclusive,

17           Defendants.

18

19      Comes now Plaintiff BATTLE CREEK STATE BANK, and for its Complaint alleges:

20                              **THE PARTIES**

21      1.      Plaintiff Battle Creek State Bank (hereinafter "Plaintiff" or "BCSB") is, and at all

22  times relevant hereto was, a Nebraska banking corporation with its principal place of business in

23  Battle Creek, Nebraska.

24      2.      Plaintiff is informed and believes and on that basis alleges that defendant RC

25  Ventures, LLC is an unknown entity form with its principal place of business in the County of

26  Marin, California and which at all times relevant hereto conducted business in the State of

27  California, County of Marin.

28

FAXED COPY

4843-0621-9555v1
DSWEATT\18508002

-1-

COMPLAINT

3.    Plaintiff is informed and believes and on that basis alleges that defendant RC Ventures Group, LLC, is a Delaware limited liability company with its principal place of business in the County of Marin, California, and which at all relevant times conducted business in the State of California, County of Marin.

4.    Plaintiff is informed and believes and on that basis alleges that RC Ventures Group II, LLC, is a California limited liability company with its principal place of business in the County of Marin, California, and which at all relevant times conducted business in the State of California, County of Marin.  Plaintiff is further informed and believes and on that basis alleges that RC Ventures Group II, LLC, is currently listed under the California Secretary of State's Business Portal web site as a suspended corporation.

5.    Plaintiff is informed and believes and on that basis alleges that defendant RC Ventures, LLC, has also been known as and/or has done business as RC Ventures Group, LLC, or as RC Ventures Group II, LLC.  (Hereinafter, RC Ventures, LLC; RC Ventures Group, LLC; and RC Ventures Group II, LLC, are sometimes collectively referred to for convenience as the "RC Entities.")

6.    Plaintiff is informed and believes and on that basis alleges that defendant Mari Susanna De Marsh (hereinafter "DeMarsh") is, and at all times relevant hereto was, an individual residing in the County of Marin, California.

7.    Plaintiff is informed and believes and on that basis alleges that Michael Revels Cayton, aka Revels Cayton  (hereinafter "Cayton"), was an individual, now deceased, who at all times relevant hereto resided in the County of Marin, California until his death on August 13, 2014. There is a pending Petition to Administer Estate of Cayton (Marin County Superior Court Case No. 1501377), which is set to be heard on May 26, 2015, after which time leave will be sought to amend this Complaint to name the Estate of Revels Cayton as a party in this action.

8.    The true names and capacities, whether individual, corporate, associate or otherwise, of the Defendants named and sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff will amend its Complaint to show their true names and capacities when the same have been ascertained.  Plaintiff is informed and

-2-

COMPLAINT

1  believes and on that basis alleges that each of the fictitiously named Defendants is in some way

2  responsible for the events, transactions, omissions, and occurrences referred to herein and that

3  Plaintiff's damages as herein alleged were proximately caused by those events, transactions,

4  omissions and occurrences. Throughout this Complaint references to "Defendants" shall mean and

5  refer to "Defendants and each of them," unless the context specifies otherwise.

6      9.    Plaintiff is informed and believes and on that basis alleges that at all times relevant

7  hereto, Defendants, and each of them, were the agents, servants, partners or co-conspirators of each

8  other and, in doing the things herein alleged, were acting within the course and scope of such

9  agency, service, partnership or conspiracy.

10     10.   Plaintiff is informed and believes and on that basis alleges that the RC Entities are

11 member-managed limited liability companies that had only two members, Cayton and DeMarsh.

12 Plaintiff is informed and believes and on that basis alleges that DeMarsh is now the only surviving

13 member of the RC Entities.

14     11.   Plaintiff is informed and believes and on that basis alleges that Demarsh and the RC

15 Entities are the alter egos of each other. Specifically, they commingled individual and corporate

16 funds, failed to observe corporate formalities including maintaining minutes, and failed to contribute

17 sufficient capital to sustain the RC Entities. There lacks such a unity of interest and ownership

18 between each of the RC Entities and DeMarsh that the separate personalities of the limited liability

19 companies and the owners do not exist. DeMarsh and the RC Entities are jointly and severally liable

20 for one another's debts because the failure to disregard the corporate entity would sanction a fraud or

21 promote injustice.

22     12.   On or about September 26, 2008 BCSB loaned the sum of $1,340,500.00 to RC

23 Ventures, LLC (hereinafter "Loan"). The Loan was made pursuant to the terms of a "Line of Credit

24 Agreement" and Promissory Note entered into between BCSB and RC Ventures, LLC and a personal

25 guarantee agreement executed by Cayton of the same date (hereinafter referred to as the "Original

26 Loan Agreement"). True and correct copies of the Original Loan Agreement documents are attached

27 hereto collectively as Exhibit 1 and incorporated herein by reference. Both RC Ventures, LLC and

28

-3-

4843-0621-9555v1
DSWEATT\18508002

1 Cayton are identified as "Borrowers" in the Original Loan Agreement, and each of the Defendants

2 was therefore jointly and severally liable for repayment of the entire amount of the Loan.

3        13.     Among other things, the Original Loan Agreement required repayment in full of all

4 amounts advanced to the Borrowers under its terms, plus all accrued interest, on or before September

5 26, 2009.

6        14.     In making the Loan, BCSB relied upon the assets of Cayton and RC Ventures, LLC

7 that Cayton disclosed to BCSB at the time of the Loan.  In addition to the assets and income of RC

8 Ventures, LCC, BCSB also relied upon the real property and other assets of Cayton that he disclosed

9 to BCSB in his application process for the Loan, including, but not limited to, the residence Cayton

10 owned at 234 Currey Lane, Sausalito, California (hereinafter, the "Currey Lane Property") and

11 certain commercial property owned in the state of Florida (hereinafter, the "Florida Property," and

12 collectively with the Currey Lane Property, the "Real Property").  Cayton had purchased the Currey

13 Lane Property in 2006 as an unmarried man, which fact was disclosed to BCSB.  Cayton also used

14 the Currey Lane Property as the business address of his various business entities, which included the

15 RC Entities.

16        15.     RC Ventures, LLC and Cayton later defaulted on the Original Loan Agreement.  As a

17 result, lawsuits involving several of the parties (plus others) were filed, which eventually resulted in

18 the parties' entering into a written Settlement and Release Agreement in or about November 2011.

19        16.     As required by the terms of the Settlement and Release Agreement, on November 1,

20 2011 RC Ventures, LLC and Cayton individually entered into a "Commercial Debt Modification

21 Agreement" with BCSB (the "Modification Agreement").  A true and correct copy of the

22 Modification Agreement is attached hereto as Exhibit 2 and incorporated herein by reference.

23        17.     Among other things, the Modification Agreement reduced the amount due and owing

24 on the Loan at that time to the total principal sum of $1,340,500.00.  The Loan was also modified to

25 provide for repayment in equal monthly installments of seven thousand four hundred thirty-five

26 dollars and ninety-eight cents ($7,435.98) commencing December 12, 2011 until fully paid (the

27 "Installment Payments").

28

-4-

COMPLAINT

18.     The interest rate provided for under the Modification Agreement was 3.0% per annum; however, in the event of a default, the interest rate was to increase to 16% per annum ("Default Rate").  The Modification Agreement also extended the maturity date of the Loan, as reflected in the Original Loan Agreement, to November 1, 2018.

19.     Other than the aforementioned modifications, the Modification Agreement expressly stated that all of "the terms of the Prior Obligation [Original Loan Agreement] remain in effect." (Hereinafter, the Original Loan Agreement and the Modification Agreement will sometimes be collectively referred to as the "Agreement.")

20.     Commencing December 12, 2011, and through August 2014, Defendants made all Installment Payments as required by the Agreement.

21.     Plaintiff is informed and believes and on that basis alleges that Cayton died on August 13, 2014.  The cause of death listed on the death certificate of Revels M. Cayton issued by the Marin County Public Health Department was "Cardiopulmonary Arrest; Prostate Cancer."

22.     Plaintiff was unaware of Cayton's death until Installment Payments on the Agreement ceased to be made in January 2015.  At that point Plaintiff investigated and learned that Cayton had died several months earlier, even though between August 2014 and January 2015 Installment Payments continued to be made by the RC Entities, checks for which were apparently being signed by DeMarsh.

23.     Plaintiff has also recently learned that in or about May 2014, without apparent consideration, Cayton transferred title to the Currey Lane Property to himself and DeMarsh as "joint tenants."  At the time of such transfer both Cayton and DeMarsh knew that he was suffering from a fatal illness and would likely die in a short time.  When Cayton in fact died just three months later, DeMarsh executed and recorded with the County of Marin an "Affidavit-Death of Joint Tenant," transferring title to the Currey Lane Property to herself as the surviving joint tenant with right of survivorship.  Plaintiff is informed and believes and on that basis alleges that the Currey Lane Property is worth at least $3,000,000 and has loans against it which total approximately $2,000,000.

24.     Plaintiff has also recently learned that in or about October 2014, after Cayton's death, DeMarsh sold the Florida Property for $3,000,000.  Plaintiff is informed and believes and on that

-5-

basis alleges that at the time of the sale by DeMarsh, the Florida Property was encumbered by a real estate mortgage of approximately $2,100,000.

25.    Plaintiff is informed and believes and on that basis alleges that DeMarsh has taken possession and control of all of the RC Entities' and Cayton's remaining assets, including cash and real property, which would have been available to pay the debt owed to BCSB.  Further, DeMarsh had been actively involved in managing the affairs of the RC Entities when Cayton was alive and was well aware of the obligation owed by the RC Entities and Cayton himself under the Loan and the Agreement.

26.    At the time of filing this complaint, the outstanding balance owed under the Agreement was $1,103,552.67, with interest continuing to accrue at the Default Rate since March 13, 2015.

<u>FIRST CAUSE OF ACTION</u>
[FOR BREACH OF CONTRACT AGAINST ALL DEFENDANTS

27.    The allegations of Paragraphs 1 through 26 are re-alleged and incorporated herein by this reference, and Plaintiff further alleges as follows:

28.    A written contract exists between BCSB and Defendants (the Agreement), as reflected in Exhibits 1 and 2 attached hereto and incorporated herein.

29.    Plaintiff has performed all of the terms and conditions required of it under the Agreement.

30.    Defendants have breached the written contract by failing to pay back the sums owed when due.  Specifically, Defendants have been in default of the obligation to make the Installment Payments since January 2015.

31.    The Agreement contains an acceleration clause entitling Plaintiff to demand and sue for the full amount due, plus all accrued interest, if the Loan goes into default.  Although not required under the Agreement, Plaintiff made a written demand to Defendants on April 10, 2015 for full payment of the entire amount due on the Loan, but despite demand therefor, payment has not been made and Plaintiff now elects to accelerate the full balance.

-6-

4843-0621-9555v1
DSWEATT\18508002

32.     The Agreement contains an attorneys' fees clause, under which Plaintiff is entitled to recover all fees and costs (including attorneys' fees) incurred in having to enforce the Agreement and to collect on the Loan.

33.     As a direct and proximate result of Defendants' breach of the Agreement, BCSB has been damaged in the amount of the balance due and owing of $1,103,552.67, plus interest at the Default Rate from and after March 13, 2015, until paid. Plaintiff has also had to retain the services of the undersigned law firm in order to collect on the Loan and enforce the Agreement, and as a result, Plaintiff has incurred additional recoverable costs and attorneys' fees in an amount to be proved.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

SECOND CAUSE OF ACTION
[FOR FRAUDULENT TRANSFER AGAINST ALL DEFENDANTS]

34.     The allegations of Paragraphs 1 through 26 are re-alleged and incorporated herein by this reference, and Plaintiff further alleges as follows:

35.     Plaintiff is informed and believes and on that basis alleges that the RC Entities and Cayton have transferred assets, including the Real Property, to DeMarsh for no or less than adequate consideration.

36.     Plaintiff is informed and believes and on that basis alleges that Defendants acted with the intent and purpose to transfer the assets and the Real Property from Cayton to themselves in order to hinder, delay, or defraud BSCB, which is a creditor.

37.     Plaintiff is informed and believes and on that basis alleges that such fraudulent transfers include, but are not limited to, the monies and assets of the RC Entities, which were transferred to one another and/or to DeMarsh, as well as the Currey Lane Property transferred from Cayton to DeMarsh less than three (3) months before his imminent death without adequate consideration, and the Florida Property sold by DeMarsh after Cayton's death.

38.     As a direct and proximate result of Defendants' wrongful and intentional conduct, Plaintiff has been harmed and damaged in the amount of the balance due and owing of $1,103,552.67, plus interest at the Default Rate from and after March 13, 2015, until paid. Plaintiff

-7-

4843-0621-9555v1
DSWEATT\18508002

has also had to retain the services of the undersigned law firm in order to collect on the Loan and enforce the Agreement, and as a result, Plaintiff has incurred additional recoverable costs and attorneys' fees in an amount to be proved.

39.   Defendants committed the acts herein alleged maliciously, fraudulently and with the wrongful and deliberate intention of injuring Plaintiff and benefiting themselves, and acted with an improper motive amounting to malice and conscious disregard of Plaintiff's rights.   Accordingly, Plaintiff is entitled to recover punitive and exemplary damages from Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

**THIRD CAUSE OF ACTION**
**[FOR CONSTRUCTIVE TRUST AGAINST DEMARSH AND DOES 1-20]**

40.   The allegations of Paragraphs 1 through 26 are re-alleged and incorporated herein by this reference, and Plaintiff further alleges as follows:

41.   Plaintiff is informed and believes and on that basis alleges that DeMarsh has wrongfully, by way of undue influence, fraudulent transfer, or other wrongful act, taken possession of Cayton's and the RC Entities' money and assets, including the Real Property and any proceeds therefrom, that would be available to BCSB as a creditor of Cayton and the RC Entities to collect the amount due and owing to BCSB.

42.   By virtue of DeMarsh's wrongful acts, as aforesaid, she holds the converted funds and/or Real Property, to the extent of the amount owed to Plaintiff on the Loan, in trust for Plaintiff.

43.   As a direct and proximate cause of Defendants' wrongful conduct, BCSB has been damaged in the amount of the balance due and owing of $1,103,552.67, plus interest at the Default Rate from and after March 13, 2015, until paid.   Plaintiff has also had to retain the services of the undersigned law firm in order to collect on the Loan and enforce the Agreement, and as a result, Plaintiff has incurred additional recoverable costs and attorneys' fees in an amount to be proved.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

///

///

///

-8-

1

2

## PRAYER FOR RELIEF

For All Causes of Action

3    1.    For general damages in the sum of $1,103,552.67;

4    2.    For interest in the amount of 16% per annum since March 13, 2015;

5    3.    For all costs incurred;

6    4.    For reasonable attorneys' fees;

7    5.    For all other relief the Court deems just and proper.

8    For the Second Cause of Action

9    1.    For punitive damages as warranted.

10   For the Third Cause of Action

11   1.    For an order declaring that Defendant DeMarsh hold the Real Property and

12   any other assets of Cayton over which she now exercises control in trust for Plaintiff.

13

14   DATED:  MAY 4, 2015                      BERLINER COHEN

15

16                                   BY: _____

17                                   RALPH SWANSON
                                     DAWN C. SWEATT
                                     ATTORNEYS FOR PLAINTIFF BATTLE CREEK
18                                   STATE BANK

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

| | | |
|---|---|---|
| RC Ventures, LLC<br>234 Currey Lane<br>Sausalito, CA 94965 | BATTLE CREEK STATE BANK<br>202 W MAIN<br>PO BOX 368<br>BATTLE CREEK, NE 68715-0308 | Loan Number 33975<br>Date 09-26-2008<br>Maturity Date 09-26-2009<br>Loan Amount $ 1,400,000.00<br>Renewal Of |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | CODES   GL530/T511IC204 |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of one million four hundred thousand and no/100

☐ **Single Advance:** I will receive all of this principal sum on ____10.14-08____ Dollars $ 1,400,000.00 . No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On ____9-26-08____
I will receive the amount of $ ____0____ and future principal advances are contemplated.
Conditions: The conditions for future advances are Subject to Bank Approval.

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on ____

☒ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from ____09-26-2008____ at the rate of ____7.000__ % per year until 12-26-2008.

☒ **Variable Rate:** This rate may then change as stated below.

  ☒ **Index Rate:** The future rate will be 1.000 percent above the following index rate: U.S. prime rate is the base rate on corporate loans posted by at least 75% of the 30 largest U.S. banks.

  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

  ☒ **Frequency and Timing:** The rate on this note may change as often as every day beginning 12-26-2008
    A change in the interest rate will take effect On the same day.

  ☒ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than ____N/A% or less than ____7.000 %. The rate may not change more than ____% each ____

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☒ The amount of each scheduled payment will change.      ☒ The amount of the final payment will change.
☐ ____

**ACCRUAL METHOD:** Interest will be calculated on a ____Actual/365____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☒ at a rate equal to 18.00

☒ **LATE CHARGE:** If a payment is made more than ____10____ days after it is due, I agree to pay a late charge of 5.000% of the payment amount

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above: ____

**PAYMENTS:** I agree to pay this note as follows:
On demand, but if no demand is made then quarterly payments of accrued interest calculated on the amount of credit outstanding beginning on 12-26-2008 and principal due on 09-26-2008. This is a variable rate loan and the payment amounts may change. The final payment may also change.

**ADDITIONAL TERMS:**

See attached document for notary acknowledgement for signers of this note.

| | |
|---|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and data):<br><br>A Separate Aircraft Security Agreement<br><br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is Line of Credit: 2008 Epic LT, S/N 040, N933RC<br><br>**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.<br><br>RC Ventures, LLC |
| Signature for Lender | |
| | Revels Cayton, Member |
| ROGER L. BRESTEL, President | Revels Cayton, As An Individual |

**UNIVERSAL NOTE**
Experts © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN 3/4/2002

*(page 1 of 2)*

**DEFINITIONS:** As used on page 1, "⌧" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state in which you are located will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will than reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreemant on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed and credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting any liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| RC Ventures, LLC<br>234 Carey Lane<br>Sausalito, CA 94965<br><br>**BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally | BATTLE CREEK STATE BANK<br>202 W MAIN<br>PO BOX 309<br>BATTLE CREEK, NE 68715-0309<br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | Loan Number 33875<br>Date 09-26-2008<br>Maturity Date 09-26-2009<br>Loan Amount $ 1,400,000.00<br>Renewal Of _____<br>CODES GLS3007511/C204 |
|---|---|---|

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of one million four hundred thousand and no/100 _____

**Dollars $ 1,400,000.00**

- ☐ Single Advance: I will receive all of this principal sum on 10-14-08. No additional advances are contemplated under this note.
- ☒ Multiple Advance: The principal sum shown above is the maximum amount of principal I can borrow under this note. On 10-14-08
  I will receive the amount of $ 149,000 and future principal advances are contemplated.
  Conditions: The conditions for future advances are Subject to Bank Approval.

- ☐ Open End Credit: You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____
- ☒ Closed End Credit: You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 09-26-2008 at the rate of 7.000 % per year until 12-26-2008.

- ☒ Variable Rate: This rate may then change as stated below.
  - ☒ Index Rate: The future rate will be 1.000 percent above the following index rate: U.S. prime rate is the base rate on corporate loans posted by at least 75% of the 30 largest U.S. banks.
  - ☐ No Index: The future rate will not be subject to any internal or external index. It will be entirely in your control.
  - ☒ Frequency and Timing: The rate on this note may change as often as every day beginning 12-26-2008.
    A change in the interest rate will take effect On the same day.
  - ☒ Limitations: During the term of this loan, the applicable annual interest rate will not be more than 11¼ % or less than 7.000 %. The rate may not change more than _____ % each _____.

Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:
- ☐ The amount of each scheduled payment will change. ☒ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a Actual/365 basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
- ☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
- ☒ at a rate equal to 18.00

☒ **LATE CHARGE:** If a payment is made more than 10 days after it is due, I agree to pay a late charge of 5.000% of the payment amount.

- ☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:
On demand, but if no demand is made then quarterly payments of accrued interest calculated on the amount of credit outstanding beginning on 12-26-2008 and principal due on 09-26-2009. This is a variable rate loan and the payment amounts may change. The final payment may also change.

**ADDITIONAL TERMS:**

See attached document for notary acknowledgment for signers of this note.

| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):<br>A Separate Aircraft Security Agreement<br><br>(This section is for your information and is not a duplicate security document and agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is Line of Credit; 2008 Epic LT, SN 040, N931C<br><br>**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.<br>RC Ventures, LLC |
|---|---|

SIGN HERE

SIGN HERE

*Roger L. Brestel* (signature)
ROGER L. BRESTEL, President

Reves Ceyton, President

Reves Ceyton, As An Individual

**UNIVERSAL NOTE**

Exp̄er̄ēs̄ © 1984, 1991 Bankers Systems, Inc. St. Cloud, MN Form UN-3-6-2002    page 1 of 2

| | | |
|---|---|---|
| RC Ventures, LLC | BATTLE CREEK STATE BANK | |
| 234 Currey Lane | 202 W MAIN | |
| Sausalito, CA 94965 | PO BOX 308 | Line of Credit No. 33975 |
| | BATTLE CREEK, NE 68715-0308 | Date 09-26-2008 |
| **BORROWER'S NAME AND ADDRESS** | **LENDER'S NAME AND ADDRESS** | Max. Credit Amt. 1,400,000.00 |
| "I" includes each borrower above, jointly and severally. | "You" means the lender, its successors and assigns. | Loan Ref. No. 33975 |

You have extended to me a line of credit in the
AMOUNT of __one million four hundred thousand and no/100__ _____ $ 1,400,000.00

You will make loans to me from time to time until _____ 12:00 __ p.m. on __9-28-09__ _____. Although the line of credit expires on that date, I will remain obligated to perform all my duties under this agreement so long as I owe you any money advanced according to the terms of this agreement, as evidenced by any note or notes I have signed promising to repay these amounts.
     This line of credit is an agreement between you and me. It is not intended that any third party receive any benefit from this agreement, whether by direct payment, reliance for future payment or in any other manner. This agreement is not a letter of credit.

**1. AMOUNT:** This line of credit is:
   ☐ **OBLIGATORY:** You may not refuse to make a loan to me under this line of credit unless one of the following occurs:
       a. I have borrowed the maximum amount available to me;
       b. This line of credit has expired;
       c. I have defaulted on the note (or notes) which show my indebtedness under this line of credit;
       d. I have violated any term of this line of credit or any note or other agreement entered into in connection with this line of credit;
       e. _____
       _____
       _____

   ☒ **DISCRETIONARY:** You may refuse to make a loan to me under this line of credit once the aggregate outstanding advances equal or exceed
       zero and no/100 _____ $ 0.00
Subject to the obligatory or discretionary limitations above, this line of credit is:
   ☐ **OPEN-END** (Business or Agricultural only): I may borrow up to the maximum amount of principal more than one time.
   ☒ **CLOSED-END:** I may borrow up to the maximum only one time.

**2. PROMISSORY NOTE:** I will repay any advances made according to this line of credit agreement as set out in the promissory note, I signed on
     __09-26-2008__ _____, or any note(s) I sign at a later time which represent advances under this agreement. The note(s) set(s) out
the terms relating to maturity, interest rate, repayment and advances. If indicated on the promissory note, the advances will be made as follows:
__Subject to Bank Approval.__ _____
_____
_____

**3. RELATED DOCUMENTS:** I have signed the following documents in connection with this line of credit and note(s) entered into in accordance with
     this line of credit:
   ☒ security agreement dated __09-26-2008__ _____        ☐ _____
   ☐ mortgage dated _____        ☐ _____
   ☐ guaranty dated _____        ☐ _____

**4. REMEDIES:** If I am in default on the note(s) you may:
       a. take any action as provided in the related documents;
       b. without notice to me, terminate this line of credit.
       By selecting any of these remedies you do not give up your right to later use any other remedy. By deciding not to use any remedy should I
       default, you do not waive your right to later consider the event a default, if it happens again.

**5. COSTS AND FEES:** If you hire an attorney to enforce this agreement I will pay your reasonable attorney's fees, where permitted by law. I will also
     pay your court costs and costs of collection, where permitted by law.

**6. COVENANTS:** For as long as this line of credit is in effect or I owe you money for advances made in accordance with the line of credit, I will do the
     following:
       a. maintain books and records of my operations relating to the need for this line of credit;
       b. permit you or any of your representatives to inspect and/or copy these records;
       c. provide to you any documentation requested by you which support the reason for making any advance under this line of credit;
       d. permit you to make any advance payable to the seller (or seller and me) of any items being purchased with that advance;
       e. _____
       _____
       _____

**7. NOTICES:** All notices or other correspondence with me should be sent to my address stated above. The notice or correspondence shall be effective
     when deposited in the mail, first class, or delivered to me in person.

**8. MISCELLANEOUS:** This line of credit may not be changed except by a written agreement signed by you and me. The law of the state in which you
     are located will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law per-
     mits you and me to agree to such a variation.

FOR THE LENDER                                    **SIGNATURES:** I AGREE TO THE TERMS OF THIS LINE OF CREDIT. I
                                                 HAVE RECEIVED A COPY ON TODAY'S DATE.
_____                 **SIGN HERE** _____
ROGER L. BRESTEL
Title President                                   **SIGN HERE** _____
                                                 Ravela Ceyton, As An Individual

© 1985 BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 (1-800-397-2341) FORM LCA 5/2/91                    (page 1 of 1)

**DEFINITIONS:** As used on page 1, "X" means the terms that apply to this loan. "I," "me" or "my" means Borrower who signs this note and each other person or legal entity including guarantors, endorsers, and sureties who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state in which you are located will govern this note...

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration...

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal...

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full...

**INDEX RATE:** The index will serve only as a device for setting the rate on this note...

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated...

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means...

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal...

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal...

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums)...

**SET-OFF:** I agree that you may set off any amount due and payable under the note against any right I have to receive money from you...

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property...

**DEFAULT:** I will be in default if any one or more of the following occurs...

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies...

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default...

**WAIVER:** I give up my rights to require you to do certain things...

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it...

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary...

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail...

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

PLEASE INITIAL

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _MARIN_ }

On _SEPTEMBER 22nd 2008_ before me, _ANN WAIRIMU MUNENE, NOTARY PUBLIC_
Date                                    Here Insert Name and Title of the Officer

personally appeared _REVELS CAYTON, MEMBER ?_
_REVELS CAYTON_
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
         Signature of Notary Public

ANN WAIRIMU MUNENE
Commission # 1554626
Notary Public - California
Marin County
My Comm. Expires Feb 22, 2009

Place Notary Seal Above

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _LINE OF CREDIT_

Document Date: _SEPTEMBER 26th, 2008_ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _REVELS CAYTON_
☒ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _REVELS CAYTON_
☐ Individual
☒ Corporate Officer — Title(s): _MEMBER_
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

© 2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

# EXHIBIT 2

| BORROWER NAME AND ADDRESS | LENDER NAME AND ADDRESS | LOAN DESCRIPTION |
|---|---|---|
| RC Ventures, LLC and Rovato Cayton | BATTLE CREEK STATE BANK | Number 22975 |
| 224 Curry Lane | 202 W MAIN | |
| Sausalito, CA 94965 | PO BOX 356 | Amount $ 1,340,500.00 |
| | BATTLE CREEK, NE 15715-0356 | |
| | | Date 05-11-2009 |

## COMMERCIAL DEBT MODIFICATION AGREEMENT

**DATE AND PARTIES.** The date of this Debt Modification Agreement (Modification) is November 1, 2011.

**DEFINITIONS.** As used in this Modification, the terms have the following meanings:

Pronouns. The pronouns "I," "me," and "my" refer to each Borrower signing this Modification, individually and together with their heirs, executors, administrators, successors, and assigns. You and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or entity that acquires an interest in this Modification or Prior Obligation.

Prior Obligation. "Prior Obligation" refers to any previous agreement governing my promise to pay you money, including any loan agreement, security agreement, note, or document that evidences any indebtedness, and any extensions, renewals, modifications, and substitutions.

**SETTLEMENT AGREEMENT.** The term "Settlement Agreement" means the agreement between you and I dated Effective October 19, 2011. This Modification is subject to the Settlement Agreement.

**BACKGROUND.** You and I have entered into a Prior Obligation which is evidenced by Note to be bid Exh LT as bid # 558 - #5498 ("Note")
dated 05-11-2009 ☒ in the original principal amount of / ☒ with a maximum possible principal amount of $1,340,500.00
☐ payable on demand. / ☐ payable on demand but if no demand is made, by the maturity of _____ / ☒ with a maturity date of
5-11-2009
As of the date of this Modification, the amount I owe on the Prior Obligation is $ 1,340,500.00 principal plus $ 49234222 accrued interest and late fees, for a total of
$ 1,535,142.22 ("Debt")

**MODIFICATION.** In consideration of the Settlement Agreement, you and I agree to modify the Prior Obligation as follows:

☒ **DEBT MODIFICATION.**
The Debt is changed to $1,340,500.00, representing only the principal amount of the Prior Obligation.

☒ **INTEREST RATE MODIFICATION.**

☒ **INTEREST RATE.**
Provided I timely honor my obligations under this Modification, the Settlement Agreement and the unmodified terms of the Prior Obligation, the Interest rate shall be 3.0% and shall accrue on the modified Debt amount of $1,340,500.00 commencing on the date of this Agreement. Interest shall not be compounded.

☒ Post-Maturity/Default Interest Rate.
18%

☒ **PAYMENT MODIFICATION.**
Extend maturity date from September 15, 2009 to November 1, 2018.
Monthly payments of $7,435.39 to begin starting December 12, 2011.

☒ **DRAW PERIOD MODIFICATION.**
No draws

☒ **FEES AND CHARGES MODIFICATION.**
All late charges and accrued interest included in the Debt shall be waived.

**ADDITIONAL TERMS.**
- I shall provide a notarized personal financial statement now and each year on or before October 19th.
- I shall provide a complete copy of my personal income tax filing for the prior year to you on or before October 19th of each year the note has an outstanding balance.
- I agree that time is of the essence for all of my obligations to you.

**CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all terms of the Prior Obligation remain in effect.

**INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Modification.

☒ **ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU AND ME FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS AND THE OTHER AGREEMENTS REFERRED TO IN THIS WRITING, WHICH ARE THE COMPLETE AND EXCLUSIVE STATEMENT OF OUR AGREEMENT, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT. BY SIGNING THIS MODIFICATION, THE PARTIES AFFIRM THAT NO UNWRITTEN ORAL AGREEMENT EXISTS BETWEEN THEM.**

**SIGNATURES.** By signing under seal, Borrower agrees to the terms contained in this Note. Borrower also acknowledges receipt of a copy of this Note.

**BORROWER:**
RC Ventures, LLC
_Entity Name_

_____ (Date)
Rovato Cayton, Manager / Member     Date

_____
Signature                          Date

**LENDER:**
BATTLE CREEK STATE BANK     (Seal)
_Entity Name_

_Roger L Brestel_  12-1-11
ROGER L BRESTEL, President     Date

COMMERCIAL DEBT MODIFICATION AGREEMENT

**BORROWER:**

_____ (Seal)
Signature Rovato Cayton, As An individual     Date

(Seal)

**Exhibit 1**
**Page 2 of 2**

©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form CCMG-CMOD 7/10/2004

NOT TO BE USED FOR LOANS SUBJECT TO CONSUMER LENDING LAWS
(page 1 of 1)

| BORROWER'S NAME AND ADDRESS | LENDER'S NAME AND ADDRESS | LOAN DESCRIPTION |
|---|---|---|
| RC Ventures, LLC and Ronnie Clayton | BATTLE CREEK STATE BANK | Number 10273 |
| 234 Cozy Lane | 201 E MAIN | |
| Granville, CA 94648 | PO BOX 156 | Amount $ 1,248,803.00 |
| | BATTLE CREEK, NE 68715-0156 | |
| | | Date 05/11/2009 |

## COMMERCIAL DEBT MODIFICATION AGREEMENT

**DATE AND PARTIES.** The date of this Debt Modification Agreement (Modification) is November 1, 2011.

**DEFINITIONS.** As used in this Modification, the terms have the following meanings:

Pronouns. The pronouns "I," "me," and "my" refer to each Borrower signing this Modification, individually and together with their heirs, successors, administrators, successors and assigns. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or entity that acquires an interest in the Modification or Prior Obligation.

Prior Obligation. "Prior Obligation" refers to my previous agreement governing my promise to pay you money, including any loan agreement, security agreement, note, or discount of that evidences any indebtedness, and any extension, renewal, modification and substitution.

SETTLEMENT AGREEMENT. The term "Settlement Agreement" means the agreement between you and I dated Effective October 15, 2011. This Modification is subject to the Settlement Agreement.

**BACKGROUND.** You and I have entered into a Prior Obligation which is evidenced by Note to hold ????? ????? [ ] ???? ????? ("Note")

dated 05/11/2009 _____ [X] in the original principal amount of / [X] with a maximum possible principal amount of $ 1,248,803.00
☐ payable on demand. / ☐ payable on demand but if no demand is made, by the maturity of _____ / [X] with a maturity date of
5/11/XXXX _____ .

As of the date of this Modification, the amount I owe on the Prior Obligation is $ 1,248,803.49 principal plus $ ???????? accrued interest and late fees, for a total of
$ 1,303,145.???("Debt")

**MODIFICATION.** In consideration of the Settlement Agreement, you and I agree to modify the Prior Obligation as follows.

[X] **DEBT MODIFICATION.**
The Debt is changed to $1,248,803.49, representing only the principal amount of the Prior Obligation.

[X] **INTEREST RATE MODIFICATION.**

[X] **INTEREST RATE.**
Provided I timely honor any obligations under this Modification, the Settlement Agreement and/or unmodified terms of the Prior Obligation, the interest rate shall be 1.5% and shall accrue on the modified Debt amount of $1,248,803.49 commencing on the date of this Agreement. Interest shall not be compounded.

[X] **Post-Maturity/Default Interest Rate.**
5.5%

[X] **PAYMENT MODIFICATION.**
Extend maturity date from September 23, 2010 to November 1, 2014.
Monthly payments of $7,434.53 in length starting December 17, 2011.

[X] **DRAW PERIOD MODIFICATION.**
No draws

[X] **FEES AND CHARGES MODIFICATION.**
All late charges and accrued interest included in the Debt shall be waived.

**ADDITIONAL TERMS.**

- I shall provide a restated personal financial statement now and each year on or before October 15th.
- I shall provide a complete copy of my personal business tax filing for the prior year to you on or before October 15th of each year the note has an outstanding balance.
- I agree that if each of the amounts for all of my obligations to you.

**CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all terms of the Prior Obligation remain in effect.

**INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Modification.

[X] **ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU AND ME FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS AND THE OTHER AGREEMENTS REFERRED TO IN THIS WRITING, WHICH ARE THE COMPLETE AND EXCLUSIVE STATEMENT OF OUR AGREEMENT, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT. BY SIGNING THIS MODIFICATION, THE PARTIES AFFIRM THAT NO UNWRITTEN ORAL AGREEMENT EXISTS BETWEEN THEM.**

**SIGNATURES.** By signing under seal, Borrower agrees to the terms contained in this Note. Borrower also acknowledges receipt of a copy of this Note.

**BORROWER:**

RC Ventures, LLC)

Entity Name _____

Signature (Seal) _____   Date 11/28/11

Type Ronnie Clayton, Manager / Member

Signature _____   Date

**LENDER:**

BATTLE CREEK STATE BANK

Entity Name

Signature _____   (Seal)   **BORROWER:**
ROGER L. KOSTER, President          Date    Signature Ronnie Clayton, As An Individual (Seal)   Date 11/28/11

COMMERCIAL DEBT MODIFICATION AGREEMENT

(Seal)

©1996, 2001 Bankers Systems, Inc., St. Cloud, MN Form CD-BM-DMCO TF(3/5/2)          NOT TO BE USED FOR LOANS SUBJECT TO CONSUMER LENDING LAWS          (page 1 of 2)

**Exhibit 1
Page 1 of 2**

# EXHIBIT B

1   RALPH J. SWANSON, CA STATE BAR NO. 67751
     DAWN C. SWEATT, CA STATE BAR NO. 238005
2   BERLINER COHEN
     TEN ALMADEN BOULEVARD
3   ELEVENTH FLOOR
     SAN JOSE, CALIFORNIA 95113-2233
4   TELEPHONE: (408) 286-5800
     FACSIMILE: (408) 998-5388
5   ralph.swanson@berliner.com
     dawn.sweatt@berliner.com
6

7   ATTORNEYS FOR PLAINTIFF BATTLE CREEK STATE
     BANK

FILED

AUG - 5 2015

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: E. Chais, Deputy

8            SUPERIOR COURT OF CALIFORNIA, COUNTY OF MARIN

9

10   BATTLE CREEK STATE BANK,         CASE NO. CIV 1501631

11           Plaintiff,            FIRST AMENDED COMPLAINT FOR

12        v.                 1.   BREACH OF CONTRACT
                                   2.   FRAUDULENT TRANSFER
13   RC VENTURES, LLC, a Delaware limited     3.   CONSTRUCTIVE TRUST
     liability corporation, aka RC VENTURES      4.   FRAUDULENT CONVEYANCE
14   GROUP, LLC, a Delaware limited liability
     corporation, and RC VENTURES GROUP II,
15   LLC, a California limited liability corporation;
     MARI #1, LLC, a Delaware limited liability
16   corporation, MARI SUSANNA DEMARSH,
     an individual; MARI SUSANNA DEMARSH
17   as the Special Administrator and Executor of
     the ESTATE OF MICHAEL REVELS
18   CAYTON, and DOES 1 THROUGH 20,
     inclusive,
19

20          Defendants.

21

22      Comes now Plaintiff BATTLE CREEK STATE BANK, and for its First Amended

23   Complaint alleges:

24                       **THE PARTIES**

25      1.     Plaintiff Battle Creek State Bank (hereinafter "Plaintiff" or "BCSB") is, and at all

26   times relevant hereto was, a Nebraska banking corporation with its principal place of business in

27   Battle Creek, Nebraska.

28

-1-

FIRST AMENDED COMPLAINT

830-4973-3925v1
SWEATT\18508002

2.    Plaintiff is informed and believes and on that basis alleges that defendant RC Ventures, LLC is an unknown entity form with its principal place of business in the County of Marin, California and which at all times relevant hereto conducted business in the State of California, County of Marin.

3.    Plaintiff is informed and believes and on that basis alleges that defendant RC Ventures Group, LLC, is a Delaware limited liability company with its principal place of business in the County of Marin, California, and which at all relevant times conducted business in the State of California, County of Marin.

4.    Plaintiff is informed and believes and on that basis alleges that RC Ventures Group II, LLC, is a California limited liability company with its principal place of business in the County of Marin, California, and which at all relevant times conducted business in the State of California, County of Marin.  Plaintiff is further informed and believes and on that basis alleges that RC Ventures Group II, LLC, is currently listed under the California Secretary of State's Business Portal web site as a suspended corporation.

5.    Plaintiff is informed and believes and on that basis alleges that defendant RC Ventures, LLC, has also been known as and/or has done business as RC Ventures Group, LLC, or as RC Ventures Group II, LLC. (Hereinafter, RC Ventures, LLC; RC Ventures Group, LLC; and RC Ventures Group II, LLC, are sometimes collectively referred to for convenience as the "RC Entities.")

6.    Plaintiff is informed and believes and on that basis alleges that MARI #1, LLC, is a Delaware limited liability company with its principal place of business in the County of Marin, California, and which at all relevant times conducted business in the State of California, County of Marin. (Hereinafter "MARI #1.")

7.    Plaintiff is informed and believes and on that basis alleges that defendant Mari Susanna De Marsh (hereinafter "DeMarsh") is, and at all times relevant hereto was, an individual residing in the County of Marin, California.

-2-

830-4973-3925v1
ISWEATT\18508002

8.     Plaintiff is informed and believes and on that basis alleges that Michael Revels Cayton, aka Revels Cayton (hereinafter "Cayton"), was an individual, now deceased, who at all times relevant hereto resided in the County of Marin, California until his death on August 13, 2014.

9.     An estate for Cayton has been opened twice in this county, the first by Petition to Administer Estate of Cayton (Marin County Superior Court Case No. 1501377) filed by Plaintiff on April 15, 2015. The second petition was filed by DeMarsh on or about May 15, 2015, to Administer Estate of Cayton and Probate Will filed in Marin County Superior Court Case No 1501831. In DeMarsh's petition she contends she is the Executor of Cayton's estate and she attached thereto a will allegedly executed by Cayton on August 2, 2014, just days before his death.

10.     On June 29, 2015, DeMarsh was appointed Special Administrator for the Estate of Cayton in Case No. 1501377. Plaintiff then served DeMarsh in her capacity as the Special Administrator of the Estate of Cayton with its creditor's claim. The claim went unanswered and was deemed rejected by operation of law on or about August 3, 2015.

11.     The true names and capacities, whether individual, corporate, associate or otherwise, of the Defendants named and sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend its Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and on that basis alleges that each of the fictitiously named Defendants is in some way responsible for the events, transactions, omissions, and occurrences referred to herein and that Plaintiff's damages as herein alleged were proximately caused by those events, transactions, omissions and occurrences. Throughout this Complaint references to "Defendants" shall mean and refer to "Defendants and each of them," unless the context specifies otherwise.

12.     Plaintiff is informed and believes and on that basis alleges that at all times relevant hereto, Defendants, and each of them, were the agents, servants, partners or co-conspirators of each other and, in doing the things herein alleged, were acting within the course and scope of such agency, service, partnership or conspiracy.

13.     Plaintiff is informed and believes and on that basis alleges that the RC Entities and MARI #1 are member-managed limited liability companies that had only two members, Cayton and

-3-

1   DeMarsh. Plaintiff is informed and believes and on that basis alleges that DeMarsh is now the only

2   surviving member of the MARI #1 and the RC Entities.

3       14.    Plaintiff is informed and believes and on that basis alleges that DeMarsh, and the

4   MARI #1 and RC Entities are the alter egos of each other.  Specifically, they commingled individual

5   and corporate funds, failed to observe corporate formalities including maintaining minutes, and

6   failed to contribute sufficient capital to sustain the MARI and RC Entities.  There lacks such a unity

7   of interest and ownership between MARI, each of the RC Entities and DeMarsh that the separate

8   personalities of the limited liability companies and the owners do not exist. DeMarsh, MARI #1 and

9   the RC Entities are jointly and severally liable for one another's debts because the failure to

10  disregard the corporate entity would sanction a fraud or promote injustice.

11      15.    In 2007 Cayton, through MARI #1, purchased a commercial property in Palmetto

12  Florida valued at or around three million dollars.  (Hereinafter "Florida Property").

13      16.    On or about September 26, 2008 BCSB loaned the sum of $1,340,500.00 to RC

14  Ventures, LLC (hereinafter "Loan").  The Loan was made pursuant to the terms of a "Line of Credit

15  Agreement" and Promissory Note entered into between BCSB and RC Ventures, LLC and a personal

16  guarantee agreement executed by Cayton of the same date (hereinafter referred to as the "Original

17  Loan Agreement").  True and correct copies of the Original Loan Agreement documents are attached

18  hereto collectively as Exhibit 1 and incorporated herein by reference. Both RC Ventures, LLC and

19  Cayton are identified as "Borrowers" in the Original Loan Agreement, and each of the Defendants

20  was therefore jointly and severally liable for repayment of the entire amount of the Loan.

21      17.    Among other things, the Original Loan Agreement required repayment in full of all

22  amounts advanced to the Borrowers under its terms, plus all accrued interest, on or before September

23  26, 2009.

24      18.    In making the Loan, BCSB relied upon the assets of Cayton, MARI #1 and RC

25  Ventures, LLC that Cayton disclosed to BCSB at the time of the Loan.  In addition to the assets and

26  income of RC Ventures, LLC, BCSB also relied upon the real property and other assets of Cayton

27  that he disclosed to BCSB in his application process for the Loan, including, but not limited to, the

28  residence Cayton owned at 234 Currey Lane, Sausalito, California, APN 064-232-13 (hereinafter the

-4-

830-4973-3925v1
ISWEATT\18508002

"Currey Lane Property") and the Florida Property. (Hereinafter the Florida Property and Currey Lane Property are sometimes collectively referred to as the "Real Property"). Cayton had purchased the Currey Lane Property in 2006 as an unmarried man, which fact was disclosed to BCSB. Cayton also used the Currey Lane Property as the business address of his various business entities, which included the MARI #1 and RC Entities.

19.     RC Ventures, LLC and Cayton later defaulted on the Original Loan Agreement. As a result, lawsuits involving several of the parties (plus others) were filed, which eventually resulted in the parties' entering into a written Settlement and Release Agreement in or about November 2011.

20.     As required by the terms of the Settlement and Release Agreement, on November 1, 2011 RC Ventures, LLC and Cayton individually entered into a "Commercial Debt Modification Agreement" with BCSB (the "Modification Agreement"). A true and correct copy of the Modification Agreement is attached hereto as Exhibit 2 and incorporated herein by reference.

21.     Among other things, the Modification Agreement reduced the amount due and owing on the Loan at that time to the total principal sum of $1,340,500.00. The Loan was also modified to provide for repayment in equal monthly installments of seven thousand four hundred thirty-five dollars and ninety-eight cents ($7,435.98) commencing December 12, 2011 until fully paid (the "Installment Payments").

22.     The interest rate provided for under the Modification Agreement was 3.0% per annum; however, in the event of a default, the interest rate was to increase to 16% per annum on the unpaid balance ("Default Rate"). The Modification Agreement also extended the maturity date of the Loan, as reflected in the Original Loan Agreement, to November 1, 2018.

23.     Other than the aforementioned modifications, the Modification Agreement expressly stated that all of "the terms of the Prior Obligation [Original Loan Agreement] remain in effect." (Hereinafter, the Original Loan Agreement and the Modification Agreement will sometimes be collectively referred to as the "Agreement.")

24.     Commencing December 12, 2011, and through August 2014, Defendants made all Installment Payments as required by the Agreement.

FIRST AMENDED COMPLAINT

830-4973-3925v1
\SWEATT\18508002

25.   Plaintiff is informed and believes and on that basis alleges that Cayton died on August 13, 2014. The cause of death listed on the death certificate of Revels M. Cayton issued by the Marin County Public Health Department was "Cardiopulmonary Arrest; Prostate Cancer."

26.   Plaintiff was unaware of Cayton's death until Installment Payments on the Agreement ceased to be made in January 2015. At that point Plaintiff investigated and learned that Cayton had died several months earlier, even though between August 2014 and January 2015 Installment Payments continued to be made by the RC Entities, checks for which were apparently being signed by DeMarsh.

27.   Plaintiff has also recently learned that in or about May 2014, without apparent consideration, Cayton transferred title to the Currey Lane Property to himself and DeMarsh as "joint tenants." At the time of such transfer both Cayton and DeMarsh knew that he was suffering from a fatal illness and would likely die in a short time. When Cayton in fact died just three months later, DeMarsh executed and recorded with the County of Marin an "Affidavit-Death of Joint Tenant," transferring title to the Currey Lane Property to herself as the surviving joint tenant with right of survivorship. Plaintiff is informed and believes and on that basis alleges that the Currey Lane Property is worth at least $3,000,000 and has loans against it which total approximately $2,000,000. Had the Currey Lane Property not been transferred to DeMarsh, the entirety of it would have been available as an asset to pay the debts owed by Cayton after he died.

28.   Plaintiff has also recently learned that in or about October 2014, after Cayton's death, DeMarsh sold the Florida Property for $3,000,000. Plaintiff is informed and believes and on that basis alleges that at the time of the sale by DeMarsh, the Florida Property was encumbered by a real estate mortgage of approximately $2,100,000.

29.   Plaintiff is informed and believes and on that basis alleges that DeMarsh has taken possession and control of all of MARI #1's, RC Entities' and Cayton's remaining assets, including cash and real property, which would have been available to pay the debt owed to BCSB. Further, DeMarsh had been actively involved in managing the affairs of MARI #1 and the RC Entities when Cayton was alive and was well aware of the obligation owed by the RC Entities and Cayton himself under the Loan and the Agreement.

-6-

30.     At the time of filing this complaint, the outstanding balance owed under the Agreement was $1,103,552.67, with interest continuing to accrue at the Default Rate since March 13, 2015.

### FIRST CAUSE OF ACTION
[FOR BREACH OF CONTRACT AGAINST ALL DEFENDANTS

31.     The allegations of Paragraphs 1 through 30 are re-alleged and incorporated herein by this reference, and Plaintiff further alleges as follows:

32.     A written contract exists between BCSB and Defendants (the Agreement), as reflected in Exhibits 1 and 2 attached hereto and incorporated herein.

33.     Plaintiff has performed all of the terms and conditions required of it under the Agreement.

34.     Defendants have breached the written contract by failing to pay back the sums owed when due.  Specifically, Defendants have been in default of the obligation to make the Installment Payments since January 2015.

35.     The Agreement contains an acceleration clause entitling Plaintiff to demand and sue for the full amount due, plus all accrued interest, if the Loan goes into default.  Although not required under the Agreement, Plaintiff made a written demand to Defendants on April 10, 2015 for full payment of the entire amount due on the Loan, but despite demand therefor, payment has not been made and Plaintiff now elects to accelerate the full balance.

36.     The Agreement contains an attorneys' fees clause, under which Plaintiff is entitled to recover all fees and costs (including attorneys' fees) incurred in having to enforce the Agreement and to collect on the Loan.

37.     As a direct and proximate result of Defendants' breach of the Agreement, BCSB has been damaged in the amount of the balance due and owing of $1,103,552.67, plus interest at the Default Rate from and after March 13, 2015, until paid.  Plaintiff has also had to retain the services of the undersigned law firm in order to collect on the Loan and enforce the Agreement, and as a result, Plaintiff has incurred additional recoverable costs and attorneys' fees in an amount to be proved.

-7-

830-4973-3925v1
ISWEATT\18508002

1    WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

2                      SECOND CAUSE OF ACTION
3            [FOR FRAUDULENT TRANSFER AGAINST ALL DEFENDANTS]

4        38.    The allegations of Paragraphs 1 through 30 are re-alleged and incorporated herein by

5    this reference, and Plaintiff further alleges as follows:

6        39.    Plaintiff is informed and believes and on that basis alleges that MARI #1, the RC

7    Entities and Cayton have transferred assets, including money and the Real Property, to DeMarsh for

8    no or less than adequate consideration.

9        40.    Plaintiff is informed and believes and on that basis alleges that Defendants acted with

10   the intent and purpose to transfer the assets and the Real Property from Cayton to themselves in

11   order to hinder, delay, or defraud BSCB, which is a creditor.

12       41.    Plaintiff is informed and believes and on that basis alleges that such fraudulent

13   transfers include, but are not limited to, the monies and assets of the RC Entities, which were

14   transferred to one another and/or to DeMarsh, as well as the Currey Lane Property transferred from

15   Cayton to DeMarsh less than three (3) months before his imminent death without adequate

16   consideration, and the Florida Property sold by DeMarsh merely six weeks after Cayton's death.

17       42.    As a direct and proximate result of Defendants' wrongful and intentional conduct,

18   Plaintiff has been harmed and damaged in the amount of the balance due and owing of

19   $1,103,552.67, plus interest at the Default Rate from and after March 13, 2015, until paid. Plaintiff

20   has also had to retain the services of the undersigned law firm in order to collect on the Loan and

21   enforce the Agreement, and as a result, Plaintiff has incurred additional recoverable costs and

22   attorneys' fees in an amount to be proved.

23       43.    Defendants committed the acts herein alleged maliciously, fraudulently and with the

24   wrongful and deliberate intention of injuring Plaintiff and benefiting themselves, and acted with an

25   improper motive amounting to malice and conscious disregard of Plaintiff's rights. Accordingly,

26   Plaintiff is entitled to recover punitive and exemplary damages from Defendants.

27       WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

28   //

830-4973-3925v1
\SWEATT\18508002

THIRD CAUSE OF ACTION
[FOR CONSTRUCTIVE TRUST AGAINST DEMARSH INDIVIDUALLY AND DOES 1-20]

44.    The allegations of Paragraphs 1 through 30 are re-alleged and incorporated herein by this reference, and Plaintiff further alleges as follows:

45.    Plaintiff is informed and believes and on that basis alleges that DeMarsh has wrongfully, by way of undue influence, fraudulent transfer, or other wrongful act, taken possession of Cayton's, MARI #1's and the RC Entities' money and assets, including the Real Property and any proceeds therefrom, that would be available to BCSB as a creditor of Cayton and the RC Entities to collect the amount due and owing to BCSB.  In addition to the money and assets of the RC Entities and MARI #1, BCSB also relied upon the Florida Property and Currey Lane Property in deciding whether to make the loan to Cayton, because Cayton represented to BCSB that he owned one hundred percent of the Real Property.

46.    By virtue of DeMarsh's wrongful acts, as aforesaid, she holds the converted funds and/or Real Property, to the extent of the amount owed to Plaintiff on the Loan, in trust for Plaintiff.

47.    As a direct and proximate cause of Defendants' wrongful conduct, BCSB has been damaged in the amount of the balance due and owing of $1,103,552.67, plus interest at the Default Rate from and after March 13, 2015, until paid.  Plaintiff has also had to retain the services of the undersigned law firm in order to collect on the Loan and enforce the Agreement, and as a result, Plaintiff has incurred additional recoverable costs and attorneys' fees in an amount to be proved.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

FOURTH OF ACTION
[FRAUDULENT CONVEYANCE AGAINST DEMARSH INDIVIDUALLY, DEMARSH AS
SPECIAL REPRESENTATIVE AND EXECUTOR OF THE ESTATE OF CAYTON,
AND DOES 1-20]

48.    The allegations of Paragraphs 1 through 30 are re-alleged and incorporated herein by this reference, and Plaintiff further alleges as follows:

49.    In making the Loan, BCSB relied upon the assets of Cayton disclosed to BCSB at the time of the Loan, including the Currey Lane Property.

-9-

830-4973-3925v1
ISWEATT\18508002

50.   Cayton had purchased the Currey Lane Property in 2006 as an unmarried man, which fact was disclosed to BCSB.

51.   The transfer to DeMarsh of the Currey Lane Property, as aforesaid, was made without adequate consideration therefor and with the intent to hinder, delay or defraud creditors of Cayton.

52.   Plaintiff is informed and believes and on that basis alleges that the Currey Lane Property is worth at least $3,000,000 and has loans against it which total approximately $2,000,000.

53.   At the time of the conveyance of the Currey Lane Property without adequate consideration, Plaintiff was a "creditor" having a "claim" against Cayton and his "assets," including the Currey Lane Property, as such terms are defined in California Civil Code section 3439.01.

54.   As a direct and proximate cause of Defendants' wrongful conduct, BCSB has been damaged in the amount of the balance due and owing of $1,103,552.67, plus interest at the Default Rate from and after March 13, 2015, until paid.  Plaintiff has also had to retain the services of the undersigned law firm in order to collect on the Loan and enforce the Agreement, and as a result, Plaintiff has incurred additional recoverable costs and attorneys' fees in an amount to be proved.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

## PRAYER FOR RELIEF

### For All Causes of Action

1.   For general damages in the sum of $1,103,552.67;

2.   For interest in the amount of 16% per annum since March 13, 2015;

3.   For all costs incurred;

4.   For reasonable attorneys' fees;

5.   For all other relief the Court deems just and proper.

### For the Second Cause of Action

1.   For punitive damages as warranted.

### For the Third Cause of Action

1.   For an order declaring that Defendant DeMarsh hold the Real Property and any other assets of Cayton over which she now exercises control in trust for Plaintiff.

-10-

//

## For the Fourth Cause of Action

1.     For an order voiding the May 2014 conveyance of title of the Currey Lane Property to Cayton and DeMarsh as "joint tenants"

DATED:  AUGUST 4, 2015                        BERLINER COHEN

BY: _____
RALPH SWANSON
DAWN C. SWEATT
ATTORNEYS FOR PLAINTIFF BATTLE CREEK
STATE BANK

FIRST AMENDED COMPLAINT

830-4973-3925v1
SWEATT\18508002

1  RALPH J. SWANSON, CA STATE BAR NO. 67751
   DAWN C. SWEATT, CA STATE BAR NO. 238005
2  BERLINER COHEN
   TEN ALMADEN BOULEVARD
3  ELEVENTH FLOOR
   SAN JOSE, CALIFORNIA 95113-2233
4  TELEPHONE: (408) 286-5800
   FACSIMILE: (408) 998-5388
5  ralph.swanson@berliner.com
   dawn.sweatt@berliner.com
6
   ATTORNEYS FOR PLAINTIFF BATTLE CREEK STATE
7  BANK

8              SUPERIOR COURT OF CALIFORNIA, COUNTY OF MARIN

9

10 BATTLE CREEK STATE BANK,                    CASE NO. CIV 1501631

11           Plaintiff,                        CERTIFICATE OF SERVICE

12      v.

13 RC VENTURES, LLC, a Delaware limited
   liability corporation, aka RC VENTURES
14 GROUP, LLC, a Delaware limited liability
   corporation, and RC VENTURES GROUP II,
15 LLC, a California limited liability corporation;
   MARI #1, LLC, a Delaware limited liability
16 corporation, MARI SUSANNA DEMARSH,
   an individual; MARI SUSANNA DEMARSH
17 as the Special Administrator and Executor of
   the ESTATE OF MICHAEL REVELS
18 CAYTON, and DOES 1 THROUGH 20,
   inclusive,
19
             Defendants.
20

21      SEE ATTACHED.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28
                              -1-

1    Battle Creek State Bank v. RC Ventures, LLC, et al.      Case No. CIV 1501631

2                       **PROOF OF SERVICE**

3       I, Rebecca Flores, declare under penalty of perjury under the laws of the State of California that the following facts are true and correct:

4       I am a citizen of the United States, over the age of eighteen years, and not a party to the within action. I am an employee of Berliner Cohen, LLP, and my business address is Ten Almaden

5   Boulevard, Eleventh Floor, San Jose, California 95113-2233. On August 5, 2015, I served the following document(s):

6       **SUMMONS TO FIRST AMENDED COMPLAINT; AND**

7       **FIRST AMENDED COMPLAINT**

8   in the following manner:

9   ☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, from the sending facsimile machine telephone number of

10       _____. The transmission was reported as complete and without error by the machine. Pursuant to California Rules of Court, Rule 2008(e)(4), I caused the machine to print a transmission record of

11       the transmission, a copy of which is attached to the original of this declaration. The transmission report was properly issued by the transmitting facsimile machine.

12   ☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Jose, California addressed as set forth below.

13   ☐   by overnight mail by placing the document(s) listed above in a sealed overnight mail envelope with

14       postage thereon fully prepaid, addressed as set forth below.

15   ☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

16   ☐   by e-mail or electronic transmission. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I cause the documents to be sent to the persons at the e-

17       mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

18

19   ATTORNEY FOR MARI SUSANNA DEMARSH AND MARI SUSANNA DEMARSH AS THE

20   SPECIAL ADMINISTRATOR AND EXECUTOR OF THE ESTATE OF MICHAEL REVELS

21   CAYTON:

22   Robyn B. Christo, Esq. Epstein Law Firm

23   369-B Third Street, San Rafael, CA 94901

24       I am readily familiar with my firm's practice for collection and processing of correspondence

25   for mailing with the United States Postal Service/Express Mail, Federal Express and other overnight mail services, to wit, that correspondence will be deposited with the United States Postal

26   Service/overnight mail service this same day in the ordinary course of business.

27       Executed on August 5, 2015, at San Jose, California.

28                                  REBECCA FLORES

1   RALPH J. SWANSON, CA STATE BAR NO. 67751
    DAWN C. SWEATT, CA STATE BAR NO. 238005
2   BERLINER COHEN
    TEN ALMADEN BOULEVARD
3   ELEVENTH FLOOR
    SAN JOSE, CALIFORNIA 95113-2233
4   TELEPHONE: (408) 286-5800
    FACSIMILE: (408) 998-5388
5   ralph.swanson@berliner.com
    dawn.sweatt@berliner.com
6

7   ATTORNEYS FOR PLAINTIFF BATTLE CREEK STATE
    BANK

```
           FILED

          AUG - 6 2015

JAMES M. KIM. Court Executive Officer
  MARIN COUNTY SUPERIOR COURT
         By: R. Smith, Deputy
```

8                    SUPERIOR COURT OF CALIFORNIA, COUNTY OF MARIN

9

10  BATTLE CREEK STATE BANK,                    CASE NO. CIV 1501631

11          Plaintiff,                          NOTICE OF ERRATA REGARDING
                                                EXHIBITS 1 AND 2 TO FIRST AMENDED
12      v.                                      COMPLAINT

13  RC VENTURES, LLC, a Delaware limited
    liability corporation, aka RC VENTURES
14  GROUP, LLC, a Delaware limited liability
    corporation, and RC VENTURES GROUP II,
15  LLC, a California limited liability corporation;
    MARI #1, LLC, a Delaware limited liability
16  corporation, MARI SUSANNA DEMARSH,
    an individual; MARI SUSANNA DEMARSH
17  as the Special Administrator and Executor of
    the ESTATE OF MICHAEL REVELS
18  CAYTON, and DOES 1 THROUGH 20,
    inclusive;
19
            Defendants.
20

21  TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

22      PLEASE TAKE NOTICE that Exhibits 1 and 2 to the First Amended Complaint was

23  inadvertently omitted at the time of filing. Attached hereto as Exhibit A is a correct copy of the First

24  Amended Complaint with exhibit attached.

25  DATED: AUGUST 6, 2015             BERLINER COHEN

26                                    BY: _____
27                                        DAWN C. SWEATT
                                          ATTORNEYS FOR PLAINTIFF BATTLE CREEK
28                                        STATE BANK

                                        -1-

823-7198-8009v1
/SWEATT/18508002

# EXHIBIT 1

| RG Ventures, LLC | BATTLE CREEK STATE BANK | Loan Number 33175 |
| 234 Darcy Lane | 202 N MAIN | Date 09-26-2008 |
| Suzanne, CA 84235 | PO BOX 368 | Maturity Date 09-26-2009 |
| | BATTLE CREEK, NE 88715-0368 | Loan Amount $ 1,600,000.00 |
| | | Renewal Of |
| **BORROWER'S NAME AND ADDRESS** | **LENDER'S NAME AND ADDRESS** | CODES 813397911/C204 |
| "I" includes each borrower above, jointly and severally. | "You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of one million five hundred thousand and 00/100
Dollars $ 1,600,000.00

☐ Single Advance: I will receive all of this principal sum on ___10-14-08___, No additional advances are contemplated under this note.
☑ Multiple Advance: The principal sum shown above is the maximum amount of principal I can borrow under this note. On ___12-26-08___
I will receive the amount of $ ___0___ and future principal advances are contemplated.
Conditions: The conditions for future advances are Subject to Bank Approval.

☐ Open End Credit: You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and ceases on _____.
☑ Closed End Credit: You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

INTEREST: I agree to pay interest on the outstanding principal balance from ___09-26-2008___ at the rate of ___7.000___ %
per year until 12-26-2008.
☑ Variable Rate: This rate may change, then change as stated below.
   ☑ Index Rate: The future rate will be 1.000 percent above ___the following index rate: U.S. prime rate in the largest rate as as generally.____
   at least 75% of the 20 largest U.S. banks.

   ☐ No index: The future rate will not be subject to any internal or external index. It will be entirely in your control.
   ☑ Frequency and Timing: The rate on this note may change as often as every day beginning 12-26-2008.
      A change in the interest rate will take effect On the same day.
   ☑ Limitations: During the term of this loan, the applicable annual interest rate will not be more than ___10%___ or less than
      ___7.000___ %. The rate may not change more than _____ % each _____.
   Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:
      ☑ The amount of each scheduled payment will change.   ☐ The amount of the final payment will change.
   ☐

ACCRUAL METHOD: Interest will be calculated on a ___Actual/365___ basis.

POST MATURITY RATE: I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
   ☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
   ☑ at a rate equal to 18.00 %

☑ LATE CHARGE: If a payment is made more than ___10___ days after it is due, I agree to pay a late charge of 5.00% of the payment amount

☐ ADDITIONAL CHARGES: In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above:

PAYMENTS: I agree to pay this note as follows:
On demand, but if no demand is made then quarterly payments of accrued interest scheduled on the amount of credit outstanding beginning on 12-26-2008 and principal due at 09-26-2009.
This is a variable rate loan and the payment amounts may change. The final payment may also change.


ADDITIONAL TERMS:

See attached document for notary acknowledgment for signers of this note.


☑ SECURITY: This note is separately secured by (describe separate document by type and date):
A Separate Abstract Security Agreement

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

PURPOSE: The purpose of this loan is Line of Credit  RGSB DO's LY, RH 642 32332

SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.
RG Ventures, LLC

Signature for Lender

_____
ROGER L. BREXTEL, President

_____
Brenda Cayton, Member

_____
Brenda Cayton, As An Individual

**UNIVERSAL NOTE**

© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN 3/4/2002        (page 1 of 2)

**DEFINITIONS:** As used on page 1, "□" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state in which you are located will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the Interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.
"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.
"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fall to make a payment on time or in the amount due; (2) I fall to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not taking any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.
By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).
I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, current and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH |
|---|---|---|---|---|---|---|---|

| BORROWER'S NAME AND ADDRESS | LENDER'S NAME AND ADDRESS | Loan Number ***** |
| BE Vermont, LLC | BATTLE CREEKSTATE BANK | Date ********** |
| 234 Dewey Lane | 302 W MAIN | Maturity Date ********** |
| Ruskin, CA 94225 | PO BOX 220 | Loan Amount $ ********** |
| | BATTLE CREEK, NE 68715-0000 | Renewal Of |
| | | ***** ************** |

"I" includes each borrower above, jointly and severally. "You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of one million two hundred and forty nine .......

Dollars $ 1,000,000.00

☐ Single Advance: I will receive all of this principal sum on __10-14-08__. No additional advances are contemplated under this note.
☒ Multiple Advance: The principal sum shown above is the maximum amount of principal I can borrow under this note. On __10-14-08__
_____ I will receive the amount of $ __149,000.__ and future principal advances are contemplated.

Conditions: The conditions for future advances are _____

"Open End Credit: You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☒ Closed End Credit: You and I agree that I may borrow up to the maximum only one time (and total subject to all other conditions).

INTEREST: I agree to pay interest on the outstanding principal balance from __09-25-2008__, at the rate of __7.000__ %
per year until __12-25-2008__.

☒ Variable Rate: This rate may then change as stated below.
  ☒ Index Rate: The future rate will be __1.000 percent above__ the following index rate: U.S. prime rate in the largest U.S. as reported in the Wall St. Journal
  ____ as has 75% of the 30 percent U.S. Index.
  ____ No Index: The future rate will not be subject to any internal or external index. It will be solely in your control.
  ☒ Frequency and Timing: The rate on the note may change as often as every for balance 12-25-2008
    A change in the interest rate will take effect on the next day.
  ☒ Limitations: During the term of this loan, the applicable annual interest rate will not be more than __10%__ or less than
    ____ 1.000 %. The rate may not change more than _____ % each _____

Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:
  ☒ The amount of each scheduled payment will change.   ☒ The amount of the final payment will change.

ACCRUAL METHOD: Interest will be calculated on a __Actual/365__ basis.
POST MATURITY RATE: I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below.
  ☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
  ☐ at a rate equal to __10.00__.

☒ LATE CHARGE: If a payment is made more than ____ 10 ____ days after it is due, I agree to pay a late charge of 5.000% of the payment amount

☐ ADDITIONAL CHARGES: In addition to interest, I agree to pay the following charges which   ☐ are   ____ , are not   included in the principal amount above _____

PAYMENTS: I agree to pay this note as follows:
On demand, but at its demand it each that yearly payment, 13 installments calculated on the amount 13 credit remaining beginning on 12-25-2008 and principal due on 09-25-2028.
This is a variable rate loan and the payment amounts may change. The final payment may also change.

ADDITIONAL TERMS:

See attached document for entry acknowledgement for repent of the note.

☒ SECURITY: This note is separately secured by (describe separate document by type and date):
A Business Security Agreement
(this section is for your information and does not affect the terms of the note)

PURPOSE: The purpose of this loan is line of Credit - 2008 Est. of 3rd ded.
system.
SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.

BE Vermont, LLC

**SIGN HERE** _____
  Derek Dryten, Managing

**SIGN HERE** _____
  Derek Dryten, Managing Member

Signature for Lender _____
  ROBERT BRISTOL, President

UNIVERSAL NOTE
©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-24 7/1/97       page 1 of 2

| SE Venture, LLC | BATTLE CREEK STATE BANK | Line of Credit No. 33675 |
| 234 Dorsey Lane | 202 W MAIN | |
| Omaha, NE 68386 | PO BOX 308 | Date .......... 09-28-2008 |
| | BATTLE CREEK, NE 68715-0308 | Max. Credit Amt. 1,400,000.00 |
| **BORROWER'S NAME AND ADDRESS** | **LENDER'S NAME AND ADDRESS** | Loan Ref. No. 33675 |
| "I" includes each borrower above, jointly and severally. | "You" means the lender, its successors and assigns. | |

You have extended to me a line of credit in the
AMOUNT of __one million four hundred thousand and no/100__ ......................................................... $ 1,400,000.00

You will make loans to me from time to time until .......... 12:01 ....... a.m. on 9-28-09 .......... Although the line of credit
expires on that date, I will remain obligated to perform all my duties under this agreement so long as I owe you any money advanced according to the
terms of this agreement, as evidenced by any note or notes I have signed promising to repay these amounts.
This line of credit is an agreement between you and me. It is not intended that any third party receive any benefit from this agreement, whether by
direct payment, reliance for future payment or in any other manner. This agreement is not a letter of credit.

**1. AMOUNT:** This line of credit is:

☐ OBLIGATORY: You may not refuse to make a loan to me under this line of credit unless one of the following occurs:
   a. I have borrowed the maximum amount available to me;
   b. This line of credit has expired;
   c. I have defaulted on the note (or notes) which show my indebtedness under this line of credit;
   d. I have violated any term of this line of credit or any note or other agreement entered into in connection with this line of credit;
   e. _____
   _____

☒ DISCRETIONARY: You may refuse to make a loan to me under this line of credit once the aggregate outstanding advances equal or exceed
zero and no/100 . . . . . . . . . . . . . . . . . $ 0.00

Subject to the obligatory or discretionary limitations above, this line of credit is:

☐ OPEN-END (Business or Agricultural only): I may borrow up to the maximum amount of principal more than one time.
☒ CLOSED-END: I may borrow up to the maximum only one time.

**2. PROMISSORY NOTE:** I will repay any advances made according to this line of credit agreement as set out in the promissory note, I signed on
.......... 09-28-2008 .......... , or any note(s) I sign at a later time which represent advances under this agreement. The note(s) set out
the terms relating to maturity, interest rate, repayment and advances. If indicated on the promissory note, the advances will be made as follows:
Subject to Bank Approval.
_____

**3. RELATED DOCUMENTS:** I have signed the following documents in connection with this line of credit and note(s) entered into in accordance with
this line of credit:

☒ security agreement dated __09-28-2008__     ☐ _____
☐ mortgage dated _____     ☐ _____
☐ guaranty dated _____

**4. REMEDIES:** If I am in default on the note(s) you may:
   a. take any action as provided in the related documents;
   b. without notice to me, terminate this line of credit.
   By selecting any of these remedies you do not give up your right to later use any other remedy. By deciding not to use any remedy should I
   default, you do not waive your right to later consider the event a default, if it happens again.

**5. COSTS AND FEES:** If you hire an attorney to enforce this agreement I will pay your reasonable attorney's fees, where permitted by law. I will also
   pay your court costs and costs of collection, where permitted by law.

**6. COVENANTS:** For so long as this line of credit is in effect or I owe you money for advances made in accordance with the line of credit, I will do the
   following:
   a. maintain books and records of my operations relating to the need for this line of credit;
   b. permit you or any of your representatives to inspect and/or copy these records;
   c. provide to you any documentation requested by you which support the reason for making any advance under this line of credit;
   d. permit you to make any advance payable to the seller (or seller and me) of any items being purchased with that advance;
   e. _____

**7. NOTICES:** All notices or other correspondence with me should be sent to my address stated above. The notice or correspondence shall be effective
   when deposited in the mail, first class, or delivered to me in person.

**8. MISCELLANEOUS:** This line of credit may not be changed except by a written agreement signed by you and me. The law of the state in which you
   are located will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law per-
   mits you and me to agree to such a variation.

FOR THE LENDER

**SIGNATURES: I AGREE TO THE TERMS OF THIS LINE OF CREDIT. I
HAVE RECEIVED A COPY ON TODAY'S DATE.**

_signature_

RUSS L. ORISTE
Title President

_signature_

_signature_

PLEASE INITIAL

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _M ARIA_

On _SEPTEMBER 22ⁿᵈ 2008_ before me, _ANN WAIRIMO MUNENE, NOTARY PUBLIC_
Date — Here Insert Name and Title of the Officer

personally appeared _REVELS CAYTON, MEMBER 3_
_REVELS CAYTON_
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws
of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature _____
Signature of Notary Public

> ANN WAIRIMU MUNENE
> Commission # 1654626
> Notary Public - California
> Marin County
> My Comm. Expires Feb 22, 2009

Place Notary Seal Above

---------------------- OPTIONAL ----------------------

*Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _LINE OF CREDIT_

Document Date: _SEPTEMBER 26ᵀᴴ, 2008_ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _REVELS CAYTON_
☒ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _REVELS CAYTON_
☐ Individual
☒ Corporate Officer — Title(s): _MEMBER_
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

# EXHIBIT 2

**COMMERCIAL DEBT MODIFICATION AGREEMENT**

**DATE AND PARTIES.**

**DEFINITIONS.**

**SETTLEMENT AGREEMENT.**

**BACKGROUND.**

**MODIFICATION.**

**1) DEBT MODIFICATION.**

**2) INTEREST RATE MODIFICATION.**

**3) INTEREST RATE.**

**4) PAYMENT MODIFICATION.**

**5) LOAN PERIOD MODIFICATION.**

**6) FEES AND CHARGES MODIFICATION.**

**ADDITIONAL TERMS.**

**CONTINUATION OF TERMS.**

**SIGNATURES.**

**BORROWER:**

**LENDER:**

**BORROWER:**

Exhibit 1
Page 2 of 2



Exhibit 1
Page 1 of 2

1    Battle Creek State Bank v. RC Ventures, LLC, et al.      Case No. CIV 1501631

2                           <u>PROOF OF SERVICE</u>

3       I, Rebecca Flores, declare under penalty of perjury under the laws of the State of California that the following facts are true and correct:

4       I am a citizen of the United States, over the age of eighteen years, and not a party to the within action. I am an employee of Berliner Cohen, LLP, and my business address is Ten Almaden

5    Boulevard, Eleventh Floor, San Jose, California 95113-2233. On August 6, 2015, I served the following document(s):

6    **NOTICE OF ERRATA REGARDING EXHIBITS 1 and 2 TO FIRST AMENDED**

7    **COMPLAINT**

     in the following manner:

8    ☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as

9           stated on the attached service list, from the sending facsimile machine telephone number of _____. The transmission was reported as complete and without error by the machine. Pursuant

10      to California Rules of Court, Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original of this declaration. The transmission

11      report was properly issued by the transmitting facsimile machine.

12    ☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Jose, California addressed as set forth below.

13    ☐   by overnight mail by placing the document(s) listed above in a sealed overnight mail envelope with postage thereon fully prepaid, addressed as set forth below.

14    ☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

15

16    ☐   by e-mail or electronic transmission. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I cause the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any

17      electronic message or other indication that the transmission was unsuccessful.

18    ATTORNEY FOR MARI SUSANNA DEMARSH, AN
INDIVIDUAL; MARI SUSANNA DEMARSH AS

19    THE SPECIAL ADMINISTRATOR AND
EXECUTOR OF THE ESTATE OF MICHAEL

20    REVELS CAYTON:

21    Robyn B. Christo, Esq.
Epstein Law Firm

22    369-B Third St.
San Rafael, CA 94901

23

24       I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service/Express Mail, Federal Express and other overnight

25    mail services, to wit, that correspondence will be deposited with the United States Postal Service/overnight mail service this same day in the ordinary course of business.

26       Executed on August 6, 2015, at San Jose, California.

27                                   REBECCA FLORES

28

1

2

## PROOF OF SERVICE

3      I, Stephanie Richter, declare under penalty of perjury under the laws of the State of California that the following facts are true and correct:

4

5      I am a citizen of the United States, over the age of eighteen years, and not a party to the within action. I am an employee of Berliner Cohen, LLP, and my business address is Ten Almaden Boulevard, Eleventh Floor, San Jose, California 95113-2233. On August 7, 2015, I served the following document(s):

6

7      NOTICE OF PENDENCY OF ACTION IN CIVIL COURT RE: REJECTED CREDITOR'S CLAIM

8

in the following manner:

9

10     ☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, from the sending facsimile machine telephone number of _____. The transmission was reported as complete and without error by the machine. Pursuant to California Rules of Court, Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original of this declaration. The transmission report was properly issued by the transmitting facsimile machine.

11

12

13     ☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Jose, California addressed as set forth below.

14     ☐ by overnight mail by placing the document(s) listed above in a sealed overnight mail envelope with postage thereon fully prepaid, addressed as set forth below.

15

16     ☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

17     ☐ by e-mail or electronic transmission. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I cause the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

18

19

SEE ATTACHED EXHIBIT "A"

20

21     I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service/Express Mail, Federal Express and other overnight mail services, to wit, that correspondence will be deposited with the United States Postal Service/overnight mail service this same day in the ordinary course of business.

22

23     Executed on August 7, 2015 at San Jose, California.

24

25                                             REBECCA FLORES

26

27

28

Exhibit A

Mari DeMarsh
234 Currey Lane
Sausalito, CA  94965

Mari DeMarsh
C/O Robin Christo, Esq.
The Epstein Law Firm
369-B Third Street #162
San Rafael, CA  94901

Kelley L. Cayton
50 Sierra Ave.
Piedmont, CA  94611

Kelley L. Cayton
C/O Mercy Pet Hospital
6418 Tupelo Dr.
Citrus Heights, CA 95621

Alanna DeMarsh
500 W 8TH Ave.
Denver, CO 80204-4525

Ben Moscatello
2674 22nd St.
San Francisco, CA 94110

# EXHIBIT C

1  RALPH J. SWANSON, CA STATE BAR NO. 67751
   DAWN C. SWEATT, CA STATE BAR NO. 238005
2  BERLINER COHEN
   TEN ALMADEN BOULEVARD
3  ELEVENTH FLOOR
   SAN JOSE, CALIFORNIA 95113-2233
4  TELEPHONE: (408) 286-5800
   FACSIMILE: (408) 998-5388
5  ralph.swanson@berliner.com
   dawn.sweatt@berliner.com
6
   ATTORNEYS FOR PLAINTIFF BATTLE CREEK STATE
7  BANK

**FILED**

JUL 2 1 2016

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: E. Chais, Deputy

8              SUPERIOR COURT OF CALIFORNIA, COUNTY OF MARIN

9

10  BATTLE CREEK STATE BANK,                    CASE NO. CIV1501631

11          Plaintiff,                          SECOND AMENDED COMPLAINT FOR

12     v.                                       1.  BREACH OF CONTRACT
                                                2.  FRAUDULENT TRANSFER
13  RC VENTURES, LLC, a Delaware limited        3.  CONSTRUCTIVE TRUST
    liability corporation, aka RC VENTURES      4.  FRAUDULENT CONVEYANCE
14  GROUP, LLC, a Delaware limited liability    5.  BREACH OF FIDUCIARY DUTY
    corporation, and RC VENTURES GROUP II,
15  LLC, a California limited liability corporation;
    MARI #1, LLC, a Delaware limited liability
16  corporation; MARI SUSANNA DEMARSH,
    an individual; MARI SUSANNA DEMARSH
17  as the Special Administrator and Executor of
    the ESTATE OF MICHAEL REVELS
18  CAYTON; MARI SUSANNA DEMARSH as
    the Trustee of the REVELS MICHAEL
19  CAYTON TRUST, Dated August 2, 2014;
    MARKOU, LLC; REVELS M. CAYTON
20  MD, INC.; and DOES 1 through 20, inclusive,

21          Defendants.

22

23          Comes now Plaintiff BATTLE CREEK STATE BANK, and for its Second Amended

24  Complaint alleges:

25                              **THE PARTIES**

26          1.      Plaintiff Battle Creek State Bank (hereinafter "Plaintiff" or "BCSB") is, and at all

27  times relevant hereto was, a Nebraska banking corporation with its principal place of business in

28  Battle Creek, Nebraska.

                                    -1-

1    2.     Plaintiff is informed and believes and on that basis alleges that defendant RC

2    Ventures, LLC is an unknown entity form with its principal place of business in the County of

3    Marin, California and which at all times relevant hereto conducted business in the State of

4    California, County of Marin.

5    3.     Plaintiff is informed and believes and on that basis alleges that defendant RC

6    Ventures Group, LLC, is a Delaware limited liability company with its principal place of business in

7    the County of Marin, California, and which at all relevant times conducted business in the State of

8    California, County of Marin.

9    4.     Plaintiff is informed and believes and on that basis alleges that RC Ventures Group II,

10    LLC, is a California limited liability company with its principal place of business in the County of

11    Marin, California, and which at all relevant times conducted business in the State of California,

12    County of Marin.  Plaintiff is further informed and believes and on that basis alleges that RC

13    Ventures Group II, LLC, is currently listed under the California Secretary of State's Business Portal

14    web site as a suspended corporation.

15    5.     Plaintiff is informed and believes and on that basis alleges that defendant RC

16    Ventures, LLC, has also been known as and/or has done business as RC Ventures Group, LLC, or as

17    RC Ventures Group II, LLC.  (Hereinafter, RC Ventures, LLC; RC Ventures Group, LLC; and RC

18    Ventures Group II, LLC, are sometimes collectively referred to for convenience as the "RC

19    Entities.")

20    6.     Plaintiff is informed and believes and on that basis alleges that MARI #1, LLC, is a

21    Delaware limited liability company with its principal place of business in the County of Marin,

22    California, and which at all relevant times conducted business in the State of California, County of

23    Marin.  (Hereinafter "MARI #1.")

24    7.     Plaintiff is informed and believes and on that basis alleges that defendant Markou,

25    LLC is a Nevada limited liability company with its principal place of business in the County of

26    Marin, California, and which at all relevant times conducted business in the State of California,

27    County of Marin.

28    8.     Plaintiff is informed and believes and on that basis alleges that defendant Mari

-2-

4810-3820-9584v1
DSWEATT\18508002

1  Susanna De Marsh (hereinafter "DeMarsh") is, and at all times relevant hereto was, an individual

2  residing in the County of Marin, California.

3       9.     Plaintiff is informed and believes and on that basis alleges that Michael Revels

4  Cayton, aka Revels Cayton  (hereinafter "Cayton"), was an individual, now deceased, who at all

5  times relevant hereto resided in the County of Marin, California until his death on August 13, 2014.

6       10.    Plaintiff is informed and believes and on that basis alleges that Revels M. Cayton,

7  MD, Inc. (hereinafter "MD, Inc.") is a California corporation formed by Cayton for the purpose of

8  running Cayton's medical practice in Oakland, California.

9       11.    An estate for Cayton has been opened twice in this county, the first by Petition to

10  Administer Estate of Cayton (Marin County Superior Court Case No. 1501377) filed by Plaintiff on

11  April 15, 2015. The second petition, to Administer Estate of Cayton and Probate Will, was filed by

12  DeMarsh on or about May 15, 2015 in Marin County Superior Court, Case No 1501831

13  ("DeMarsh's Petition").  In DeMarsh's Petition, DeMarsh contends she is the executor of Cayton's

14  estate (the "Estate") and she attaches thereto a will allegedly executed by Cayton just days before his

15  death. The Last Will and Testament of Revels Michael Cayton is dated August 2, 2014, and leaves

16  all of Cayton's assets to DeMarsh (through the Trust).

17       12.    Cayton created the Revels Michael Cayton Revocable Trust, which is also dated

18  August 2, 2014 (the "Trust").   The Trust makes DeMarsh the successor trustee (unless she

19  predeceases Cayton or refuses to serve) and the sole beneficiary.  Accordingly, DeMarsh is sued

20  herein in her capacity as successor trustee of the Trust, in addition to her individual capacity.

21       13.    On June 29, 2015, DeMarsh was appointed Special Administrator for the Estate of

22  Cayton in Case No. 1501377.   Plaintiff then served DeMarsh in her capacity as the Special

23  Administrator of the Estate of Cayton with its creditor's claim. The claim went unanswered and was

24  deemed rejected by operation of law on or about August 3, 2015.  Accordingly, DeMarsh is also

25  sued herein in her capacity as Special Administrator of the Estate, in addition to her individual

26  capacity.

27       14.    The true names and capacities, whether individual, corporate, associate or otherwise,

28  of the Defendants named and sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff,

-3-

4810-3820-9584v1
DSWEATT\18508002

1 who therefore sues said Defendants by such fictitious names. Plaintiff will amend its Complaint to

2 show their true names and capacities when the same have been ascertained. Plaintiff is informed and

3 believes and on that basis alleges that each of the fictitiously named Defendants is in some way

4 responsible for the events, transactions, omissions, and occurrences referred to herein and that

5 Plaintiff's damages as herein alleged were proximately caused by those events, transactions,

6 omissions and occurrences. Throughout this Complaint references to "Defendants" shall mean and

7 refer to "Defendants and each of them," unless the context specifies otherwise.

8        15.     Plaintiff is informed and believes and on that basis alleges that at all times relevant

9 hereto, Defendants, and each of them, were the agents, servants, partners or co-conspirators of each

10 other and, in doing the things herein alleged, were acting within the course and scope of such

11 agency, service, partnership or conspiracy.

12       16.     Plaintiff is informed and believes and on that basis alleges that the RC Entities and

13 MARI #1 are member-managed limited liability companies that had only two members, Cayton and

14 DeMarsh. Plaintiff is informed and believes and on that basis alleges that DeMarsh is now the only

15 surviving member of the MARI #1 and the RC Entities.

16       17.     Plaintiff is informed and believes and on that basis alleges that DeMarsh, and the

17 MARI #1 and RC Entities are the alter egos of each other. Specifically, they commingled individual

18 and corporate funds, failed to observe corporate formalities including maintaining minutes, and

19 failed to contribute sufficient capital to sustain the MARI and RC Entities. There lacks such a unity

20 of interest and ownership between MARI, each of the RC Entities and DeMarsh that the separate

21 personalities of the limited liability companies and the owners do not exist. DeMarsh, MARI #1 and

22 the RC Entities are jointly and severally liable for one another's debts because the failure to

23 disregard the corporate entity would sanction a fraud or promote injustice.

24       18.     In 2007 Cayton, through MARI #1, purchased a commercial property in Palmetto,

25 Florida valued at or around three million dollars. (Hereinafter, the "Florida Property").

26       19.     On or about September 26, 2008 BCSB loaned the sum of $1,340,500.00 to RC

27 Ventures, LLC (hereinafter "Loan"). The Loan was made pursuant to the terms of a "Line of Credit

28 Agreement" and Promissory Note entered into between BCSB and RC Ventures, LLC and a personal

-4-

guarantee agreement executed by Cayton of the same date (hereinafter referred to as the "Original Loan Agreement"). True and correct copies of the Original Loan Agreement documents are attached hereto collectively as Exhibit 1 and incorporated herein by reference. Both RC Ventures, LLC and Cayton are identified as "Borrowers" in the Original Loan Agreement, and each of the Defendants was therefore jointly and severally liable for repayment of the entire amount of the Loan.

20. Among other things, the Original Loan Agreement required repayment in full of all amounts advanced to the Borrowers under its terms, plus all accrued interest, on or before September 26, 2009.

21. In making the Loan, BCSB relied upon the assets of Cayton, MARI #1 and RC Ventures, LLC that Cayton disclosed to BCSB at the time of the Loan. In addition to the assets and income of RC Ventures, LLC, BCSB also relied upon the real property and other assets of Cayton that he disclosed to BCSB in his application process for the Loan, including, but not limited to, the residence Cayton owned at 234 Currey Lane, Sausalito, California, APN 064-232-13 (hereinafter the "Currey Lane Property") and the Florida Property. (Hereinafter the Florida Property and Currey Lane Property are sometimes collectively referred to as the "Real Property"). Cayton had purchased the Currey Lane Property in 2006 as an unmarried man, which fact was disclosed to BCSB. Cayton also used the Currey Lane Property as the business address of his various business entities, which included the MARI #1 and RC Entities.

22. RC Ventures, LLC and Cayton later defaulted on the Original Loan Agreement. As a result, lawsuits involving several of the parties (plus others) were filed, which eventually resulted in the parties' entering into a written Settlement and Release Agreement in or about November 2011.

23. As required by the terms of the Settlement and Release Agreement, on November 1, 2011 RC Ventures, LLC and Cayton individually entered into a "Commercial Debt Modification Agreement" with BCSB (the "Modification Agreement"). A true and correct copy of the Modification Agreement is attached hereto as Exhibit 2 and incorporated herein by reference.

24. Among other things, the Modification Agreement reduced the amount due and owing on the Loan at that time to the total principal sum of $1,340,500.00. The Loan was also modified to provide for repayment in equal monthly installments of seven thousand four hundred thirty-five

-5-

1    dollars and ninety-eight cents ($7,435.98) commencing December 12, 2011 until fully paid (the

2    "Installment Payments").

3         25.    The interest rate provided for under the Modification Agreement was 3.0% per

4    annum; however, in the event of a default, the interest rate was to increase to 16% per annum on the

5    unpaid balance ("Default Rate").  The Modification Agreement also extended the maturity date of

6    the Loan, as reflected in the Original Loan Agreement, to November 1, 2018.

7         26.    Other than the aforementioned modifications, the Modification Agreement expressly

8    stated that all of "the terms of the Prior Obligation [Original Loan Agreement] remain in effect."

9    (Hereinafter, the Original Loan Agreement and the Modification Agreement will sometimes be

10   collectively referred to as the "Agreement.")

11        27.    Commencing December 12, 2011, and through August 2014, Defendants made all

12   Installment Payments as required by the Agreement.

13        28.    Plaintiff is informed and believes and on that basis alleges that Cayton died on

14   August 13, 2014.  The cause of death listed on the death certificate of Revels M. Cayton issued by

15   the Marin County Public Health Department was "Cardiopulmonary Arrest; Prostate Cancer."

16        29.    Plaintiff was unaware of Cayton's death until Installment Payments on the Agreement

17   ceased to be made in January 2015.  At that point Plaintiff investigated and learned that Cayton had

18   died several months earlier, even though between August 2014 and January 2015 Installment

19   Payments continued to be made by the RC Entities, checks for which were being signed by

20   DeMarsh.

21        30.    Plaintiff has also learned that in or about May 2014, without apparent consideration,

22   Cayton transferred title to the Currey Lane Property to himself and DeMarsh as "joint tenants."  At

23   the time of such transfer both Cayton and DeMarsh knew that he was suffering from a fatal illness

24   and would likely die in a short time.  When Cayton in fact died just three months later, DeMarsh

25   executed and recorded with the County of Marin an "Affidavit-Death of Joint Tenant," transferring

26   title to the Currey Lane Property to herself as the surviving joint tenant with right of survivorship.

27   Plaintiff is informed and believes and on that basis alleges that the Currey Lane Property is worth at

28   least $3,000,000 and has loans against it which total approximately $2,000,000.  Had the Currey

-6-

4810-3820-9584v1
DSWEATT\18508002

1  Lane Property not been transferred to DeMarsh, the entirety of it would have been available as an

2  asset to pay the debts owed by Cayton after he died.

3       31.    Plaintiff has also learned that in or about October 2014, after Cayton's death,

4  DeMarsh sold the Florida Property for $3,000,000.  Plaintiff is informed and believes and on that

5  basis alleges that at the time of the sale by DeMarsh, the Florida Property was encumbered by a real

6  estate mortgage of approximately $2,100,000.  At close of escrow, DeMarsh had the remaining

7  proceeds from the sale (about $850,000) ("Sale Proceeds") deposited into a personal bank account

8  held jointly by her and Cayton.

9       32.    Plaintiff is informed and believes and on that basis alleges that DeMarsh then used

10  the Sale Proceeds to pay her company, Dezign Group, a sole proprietorship, more than $250,000.

11  She also paid from the Sale Proceeds her personal debts and transferred money from the bank

12  account where the Sale Proceeds were deposited to the RC Entities and to MD, Inc.  Plaintiff is

13  informed and believes and on that basis alleges that DeMarsh formed an entity called Markou, LLC,

14  and in January 2015, while she was the executor of the Estate and trustee of the Trust used assets

15  traceable to the Estate, including the Sale Proceeds, to purchase for herself a 2012 Ferrari at a

16  purchase price of approximately $275,000.

17       33.    Plaintiff is informed and believes and on that basis alleges that DeMarsh has taken

18  possession and control of all of MARI #1's, RC Entities' and Cayton's remaining assets, including

19  cash and real property, which would have been available to pay the debt owed to BCSB.  Further,

20  DeMarsh had been actively involved in managing the affairs of MARI #1 and the RC Entities when

21  Cayton was alive and was well aware of the obligation owed by the RC Entities and Cayton himself

22  under the Loan and the Agreement.

23       34.    At the time of filing this complaint, the outstanding balance owed under the

24  Agreement was $1,103,552.67, with interest continuing to accrue at the Default Rate since March

25  13, 2015.

26  FIRST CAUSE OF ACTION<br>[FOR BREACH OF CONTRACT AGAINST ALL DEFENDANTS]

27

28       35.    The allegations of Paragraphs 1 through 34 are re-alleged and incorporated herein by

-7-

1   this reference, and Plaintiff further alleges as follows:

2       36.   A written contract exists between BCSB and Defendants (the Agreement), as

3   reflected in **Exhibits 1 and 2** attached hereto and incorporated herein.

4       37.   Plaintiff has performed all of the terms and conditions required of it under the

5   Agreement.

6       38.   Defendants have breached the written contract by failing to pay back the sums owed

7   when due.  Specifically, Defendants have been in default of the obligation to make the Installment

8   Payments since January 2015.

9       39.   The Agreement contains an acceleration clause entitling Plaintiff to demand and sue

10  for the full amount due, plus all accrued interest, if the Loan goes into default.  Although not

11  required under the Agreement, Plaintiff made a written demand to Defendants on April 10, 2015 for

12  full payment of the entire amount due on the Loan, but despite demand therefor, payment has not

13  been made and Plaintiff now elects to accelerate the full balance.

14      40.   The Agreement contains an attorneys' fees clause, under which Plaintiff is entitled to

15  recover all fees and costs (including attorneys' fees) incurred in having to enforce the Agreement

16  and to collect on the Loan.

17      41.   As a direct and proximate result of Defendants' breach of the Agreement, BCSB has

18  been damaged in the amount of the balance due and owing of $1,103,552.67, plus interest at the

19  Default Rate from and after March 13, 2015, until paid.  Plaintiff has also had to retain the services

20  of the undersigned law firm in order to collect on the Loan and enforce the Agreement, and as a

21  result, Plaintiff has incurred additional recoverable costs and attorneys' fees in an amount to be

22  proved.

23      WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

24                          SECOND CAUSE OF ACTION
                  [FOR FRAUDULENT TRANSFER AGAINST ALL DEFENDANTS]
25

26      42.   The allegations of Paragraphs 1 through 34 are re-alleged and incorporated herein by

27  this reference, and Plaintiff further alleges as follows:

28      43.   Plaintiff is informed and believes and on that basis alleges that at various times

-8-

between January 2014 to the present, MARI #1, the RC Entities, Cayton and DeMarsh have transferred assets, including money and the Real Property, to DeMarsh for no or less than adequate consideration.

44.    Plaintiff is informed and believes and on that basis alleges that Defendants acted with the intent and purpose to transfer the assets and the Real Property from Cayton to themselves in order to hinder, delay, or defraud BSCB, which is a creditor of Cayton and the Estate.

45.    Plaintiff is informed and believes and on that basis alleges that such fraudulent transfers include, but are not limited to, the monies and assets of the RC Entities, which were transferred to one another and/or to DeMarsh, as well as the Currey Lane Property transferred from Cayton to DeMarsh less than three (3) months before his imminent death without adequate consideration, and the Florida Property sold by DeMarsh six weeks after Cayton's death.

46.    As a direct and proximate result of Defendants' wrongful and intentional conduct, Plaintiff has been harmed and damaged in the amount of the balance due and owing of $1,103,552.67, plus interest at the Default Rate from and after March 13, 2015, until paid. Plaintiff has also had to retain the services of the undersigned law firm in order to collect on the Loan and enforce the Agreement, and as a result, Plaintiff has incurred additional recoverable costs and attorneys' fees in an amount to be proved.

47.    Defendants committed the acts herein alleged maliciously, fraudulently and with the wrongful and deliberate intention of injuring Plaintiff and benefiting themselves, and acted with an improper motive amounting to malice and conscious disregard of Plaintiff's rights.  Accordingly, Plaintiff is entitled to recover punitive and exemplary damages from Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

### THIRD CAUSE OF ACTION
[FOR CONSTRUCTIVE TRUST AGAINST DEMARSH INDIVIDUALLY, DMARSH AS THE EXECUTOR AND SPECIAL ADMINISTARTOR OF CAYTON'S ESTATE, DEMARSH AS TRUSTEE OF CYATON'S TRUST, AND DOES 1-20]

48.    The allegations of Paragraphs 1 through 34 are re-alleged and incorporated herein by this reference, and Plaintiff further alleges as follows:

49.    Plaintiff is informed and believes and on that basis alleges that DeMarsh has

-9-

4810-3820-9584v1
DSWEATT\18508002

1    wrongfully, by way of undue influence, fraudulent transfer, or other wrongful act, taken possession

2    of Cayton's, MARI #1's and the RC Entities' money and assets, including the Real Property and any

3    proceeds therefrom, that would be available to BCSB as a creditor of Cayton and the RC Entities to

4    collect the amount due and owing to BCSB.  In addition to the money and assets of the RC Entities

5    and MARI #1, BCSB also relied upon the Florida Property and Currey Lane Property in deciding

6    whether to make the loan to Cayton, because Cayton represented to BCSB that he owned one

7    hundred percent of the Real Property.

8        50.    By virtue of DeMarsh's wrongful acts, as aforesaid, she holds the converted funds

9    and/or Real Property, to the extent of the amount owed to Plaintiff on the Loan, in trust for Plaintiff.

10       51.    As a direct and proximate cause of Defendants' wrongful conduct, BCSB has been

11   damaged in the amount of the balance due and owing of $1,103,552.67, plus interest at the Default

12   Rate from and after March 13, 2015, until paid.  Plaintiff has also had to retain the services of the

13   undersigned law firm in order to collect on the Loan and enforce the Agreement, and as a result,

14   Plaintiff has incurred additional recoverable costs and attorneys' fees in an amount to be proved.

15       WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

16                    FOURTH CAUSE OF ACTION
     [FRAUDULENT CONVEYANCE AGAINST DEMARSH INDIVIDUALLY, DEMARSH AS
17   SPECIAL REPRESENTATIVE AND EXECUTOR OF THE ESTATE OF CAYTON,
                  DEMARSH AS TRUSTEE OF THE CAYTON TRUST
18                         AND DOES 1-20]

19       52.    The allegations of Paragraphs 1 through 34 are re-alleged and incorporated herein by

20   this reference, and Plaintiff further alleges as follows:

21       53.    In making the Loan, BCSB relied upon the assets of Cayton disclosed to BCSB at the

22   time of the Loan, including the Currey Lane Property.

23       54.    Cayton had purchased the Currey Lane Property in 2006 as an unmarried man, which

24   fact was disclosed to BCSB.

25       55.    The transfer to DeMarsh of the Currey Lane Property, as aforesaid, was made without

26   adequate consideration therefor and with the intent to hinder, delay or defraud creditors of Cayton,

27   including BCSB.

28       56.    Plaintiff is informed and believes and on that basis alleges that the Currey Lane

                                -10-

4810-3820-9584v1
DSWEATT\18508002

1  Property is worth at least $3,000,000 and has loans against it which total approximately $2,000,000.

2       57.    At the time of the conveyance of the Currey Lane Property without adequate

3  consideration, Plaintiff was a "creditor" having a "claim" against Cayton and his "assets," including

4  the Currey Lane Property, as such terms are defined in California Civil Code section 3439.01.

5       58.    As a direct and proximate cause of Defendants' wrongful conduct, BCSB has been

6  damaged in the amount of the balance due and owing of $1,103,552.67, plus interest at the Default

7  Rate from and after March 13, 2015, until paid.  Plaintiff has also had to retain the services of the

8  undersigned law firm in order to collect on the Loan and enforce the Agreement, and as a result,

9  Plaintiff has incurred additional recoverable costs and attorneys' fees in an amount to be proved.

10      WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

11  **FIFTH CAUSE OF ACTION**
12  **[FOR BREACH OF FIDUCIARY DUTY AGAINST DEMARSH INDIVIDUALLY AND DEMARSH AS TRUSTEE OF THE CAYTON TRUST]**

13       59.    The allegations of Paragraphs 1 through 34 are re-alleged and incorporated herein by

14  this reference, and Plaintiff further alleges as follows:

15       60.    As the trustee under Cayton's Trust, DeMarsh had the duty to locate and take

16  possession of the Trust assets, and to develop an investment strategy suited to the purpose of the

17  Trust.  (See Cal. Probate Code §§16006 and 16049.)

18       61.    DeMarsh owed a duty to BCSB equivalent to that of a trustee or administrator of an

19  estate who owes fiduciary duties to the estate's beneficiaries.  (*Berg & Berg Enterprises, LLC v.*

20  *Sherwood Partners, Inc.* (2005) 131 Cal. App. 4th 802, 825-826, citing *Farmers etc. Nat. Bank v.*

21  *Peterson* (1936) 5 Cal.2d 601, 603–607.)

22       62.    Cayton's living/revocable trust was liable for the debts of Cayton.  When he died, the

23  Trust became permanent and irrevocable.  However, the debt to BCSB still remained and BCSB as a

24  creditor has rights against the Trust to collect the money owed, since the Trust was revocable as of

25  the date of Cayton's death.

26       63.    DeMarsh concealed Cayton's death from BCSB, failed to serve a notice to creditors,

27  failed to marshal the assets of Cayton's estate, and failed to properly and proportionately pay the

28  creditors of Cayton's Estate.

-11-

4810-3820-9584v1
DSWEATT\18508002

64.     Because DeMarsh, the successor trustee and sole beneficiary, did not pay the debt to BCSB or marshal all the assets and debts of the Estate before singling out specific creditors for payment, but instead distributed the Trust assets to herself and/or for the benefit of herself, DeMarsh became liable to BCSB in the amount of Trust assets she distributed to herself or for her benefit. (Cal. Pro. Code § 19400.)

65.     As a direct and proximate cause of DeMarsh's bad faith and self-dealing, BCSB was harmed in the amount DeMarsh received from Cayton's Estate or that was paid or expended for her benefit.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

## PRAYER FOR RELIEF

### For All Causes of Action

1.     For general damages in the sum of $1,103,552.67;

2.     For interest at the Default Rate of 16% per annum since March 13, 2015     ;

3.     For all costs incurred;

4.     For reasonable attorneys' fees;

5.     For all other relief the Court deems just and proper.

### For the Second Cause of Action

1.     For punitive damages as warranted.

### For the Third Cause of Action

1.     For an order declaring that Defendant DeMarsh hold the Real Property and any other assets of Cayton over which she now exercises control in trust for Plaintiff.

### For the Fourth Cause of Action

1.     For an order voiding the May 2014 conveyance of title of the Currey Lane Property to Cayton and DeMarsh as "joint tenants."

### For the Fifth Cause of Action

1.     For an order voiding all distributions from the Estate to DeMarsh and those for her benefit, including, but not limited to, payments to Dezign Group, Markou, LLC, CitiBank, Bank of

-12-

4810-3820-9584v1
DSWEATT\18508002

1    America, and American Express, among others.

2

3    DATED:  JULY **20**, 2016              BERLINER COHEN

4

5                                   BY: _____

6                                        RALPH SWANSON
                                         DAWN C. SWEATT
7                                        ATTORNEYS FOR PLAINTIFF BATTLE CREEK
                                         STATE BANK

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-



B BERLINER
COHEN LLP

BERLINER COHEN, LLP
TEN ALMADEN BOULEVARD, ELEVENTH FLOOR
SAN JOSE, CALIFORNIA 95113-2233

18508-002

Eugene Brown, Jr.
Sedgwick LLP
333 Bush St., 30th Fl.
San Francisco, CA  94104

# EXHIBIT D

AMENDED **SUMMONS** TO SECOND AMENDED COMPLAINT | **SUM-100**
*(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** RC VENTURES, LLC, a Delaware limited liability corporation, aka
*(AVISO AL DEMANDADO):* RC VENTURES GROUP, LLC, a Delaware limited liability
corporation, and RC VENTURES GROUP II, LLC, a California limited liability corporation; MARI #1,
LLC, a Delaware limited liability corporation; MARI SUSANNA DEMARSH, an individual; MARI
SUSANNA DEMARSH as the Special Administrator and Executor of the ESTATE OF MICHAEL
REVELS CAYTON; MARI SUSANNA DEMARSH as the Trustee of the REVELS MICHAEL CAYTON
TRUST, Dated August 2, 2014; MARKOU, LLC; REVELS M. CAYTON MD, INC.; and DOES 1 through
20, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** Battle Creek State Bank
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*



**FILED**

JUL 27 2016

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: C. Lucchesi, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF MARIN<br>3501 CIVIC CENTER DRIVE<br>P.O. BOX 4988<br>SAN RAFAEL, CA  94903 | CASE NUMBER:<br>*(Número del Caso):*<br>CIV 1501631 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
RALPH J. SWANSON, CSB #67751          (408) 286-5800   (408) 998-5388
DAWN C. SWEATT, CSB #238005
BERLINER COHEN, 10 ALMADEN BLVD., STE. 1100
SAN JOSE, CA  95113-2233

DATE: JUL 27 2016          JAMES M. KIM          Clerk, by          C. LUCCHESI          , Deputy
*(Fecha)*          *(Secretario)*          *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]
(SEAL)

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Markou, LLC
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☑ other *(specify):* Corps C. 17701.16 (LLC)
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

COPY   Legal Solutions Plus   FAXED

# EXHIBIT E

1   **SEDGWICK LLP**
    EUGENE BROWN, JR., ESQ. (State Bar No. 79824)
2   eugene.brown@sedgwicklaw.com
    AMEE A. MIKACICH, ESQ. (State Bar No.146814)
3   amee.mikacich@sedgwicklaw.com
    SUNNY S. SHAPIRO, ESQ. (State Bar No. 221111)
4   sunny.shapiro@sedgwicklaw.com
    333 Bush Street, 30th Floor
5   San Francisco, CA  94101-2834
    Telephone:    415.781.7900
6   Facsimile:    415.781.2635

7   Attorneys for Defendants
    MARI SUSANNA DEMARSH, an individual; MARI
8   SUSANNA DEMARSH, as the Special Administrator and
    Executor of the ESTATE OF REVELS MICHAEL
9   CAYTON, erroneously sued as MICHAEL REVELS
    CAYTON; MARKOU, LLC; and MARI SUSANNA
10  DEMARSH as the Trustee of the REVELS MICHAEL
    CAYTON TRUST Dated August 4, 2014

11

12              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                          **COUNTY OF MARIN**

14

15  BATTLE CREEK STATE BANK,              | **CASE NO. CIV 1501631**

16              Plaintiff,

17         v.                            **ANSWER TO SECOND AMENDED
                                          COMPLAINT FOR:**
18  RC VENTURES, LLC, a Delaware limited
    liability corporation, aka RC VENTURES   **1.  BREACH OF CONTRACT**
19  GROUP, LLC, a Delaware limited liability **2.  FRAUDULENT TRANSFER**
    corporation, and RC VENTURES GROUP       **3.  CONSTRUCTIVE TRUST**
20  II, LLC, a California limited liability  **4.  FRAUDULENT CONVEYANCE**
    corporation; MARI #1, LLC, a Delaware    **5.  BREACH OF FIDUCIARY DUTY**
21  limited liability corporation; MARI
    SUSANNA DEMARSH, an individual;
22  MARI SUSANNA DEMARSH, as the
    Special Administrator and Executor of the
23  ESTATE OF MICHAEL REVELS
    CAYTON; MARI SUSANNA DEMARSH,
24  as the Trustee of the REVELS MICHAEL
    CAYTON TRUST, Dated August 2, 2014;
25  MARKOU, LLC; REVELS M. CAYTON
    MD, INC.; and DOES 1 through 20,
26  inclusive,

27              Defendants.

28

Sedgwick

1    COME NOW, Defendants MARI SUSANNA DEMARSH, an individual; MARI

2  SUSANNA DEMARSH, as the Special Administrator and Executor of the ESTATE OF

3  REVELS MICHAEL CAYTON; MARI SUSANNA DEMARSH, as the Trustee of the REVELS

4  MICHAEL CAYTON TRUST, Dated August 4, 2014; and MARKOU, LLC; and by way of

5  Answer to the Second Amended Complaint ("Complaint") and pursuant to the terms of

6  California Code of Civil Procedure Section 431.30, denies generally each and every allegation of

7  the complaint.  Defendant further specifically denies that it is liable to plaintiff in any sum or

8  sums whatsoever, or at all, for special, compensatory, punitive or any other type of damage.

9    **AND AS FOR A FIRST, SEPARATE DISTINCT AND AFFIRMATIVE**

10 **DEFENSE, DEFENDANTS ALLEGE:**

11    That the complaint, and each cause of action stated therein, fails to state facts sufficient to

12 constitute a cause of action.

13    **AND AS FOR A SECOND, SEPARATE DISTINCT AND AFFIRMATIVE**

14 **DEFENSE, DEFENDANTS ALLEGE:**

15    That neither the complaint, nor any of the alleged causes of action therein, state facts

16 sufficient to constitute a cause of action for equitable relief against this answering defendant.

17    **AND AS FOR A THIRD, SEPARATE DISTINCT AND AFFIRMATIVE**

18 **DEFENSE, DEFENDANTS ALLEGE:**

19    That the complaint fails to properly invoke the equity jurisdiction of the court.

20    **AND AS FOR A FOURTH, SEPARATE DISTINCT AND AFFIRMATIVE**

21 **DEFENSE, DEFENDANTS ALLEGE:**

22    That this court lacks personal jurisdiction as to this answering defendant.

23    **AND AS FOR A FIFTH, SEPARATE DISTINCT AND AFFIRMATIVE**

24 **DEFENSE, DEFENDANTS ALLEGE:**

25    That the applicable statutes of limitations, including but not limited to, C.C.P. sections

26 337 and 339 bar the complaint and each cause of action stated therein.

27    **AND AS FOR A SIXTH, SEPARATE DISTINCT AND AFFIRMATIVE**

28 **DEFENSE, DEFENDANTS ALLEGE:**

-2-

**ANSWER TO SECOND AMENDED COMPLAINT**

1   That the complaint, and each cause of action stated therein is ambiguous and uncertain.

2   **AND AS FOR A SEVENTH, SEPARATE DISTINCT AND AFFIRMATIVE**

3   **DEFENSE, DEFENDANTS ALLEGE:**

4   That the complaint is barred by the doctrine of modification pursuant to Civil Code

5   sections 1697 and/or 1698.

6   **AND AS FOR AN EIGHTH, SEPARATE DISTINCT AND AFFIRMATIVE**

7   **DEFENSE, DEFENDANTS ALLEGE:**

8   That the complaint is barred by the doctrines of waiver and estoppel.

9   **AND AS FOR A NINTH, SEPARATE DISTINCT AND AFFIRMATIVE**

10  **DEFENSE, DEFENDANTS ALLEGE:**

11  That plaintiff has unreasonably delayed the commencement of this action and prejudiced

12  this answering defendant such that the doctrine of laches bars the complaint and each cause of

13  action therein.

14  **AND AS FOR A TENTH, SEPARATE DISTINCT AND AFFIRMATIVE**

15  **DEFENSE, DEFENDANTS ALLEGE:**

16  That plaintiff's damages, if any, are completely or in part the result of plaintiff's failure to

17  mitigate as required by law.

18  **AND AS FOR AN ELEVENTH, SEPARATE DISTINCT AND AFFIRMATIVE**

19  **DEFENSE, DEFENDANTS ALLEGE:**

20  That the complaint is barred by the doctrine of rescission pursuant to Civil Code sections

21  1533, 1566, 1688 and/or 1689.

22  **AND AS FOR A TWELFTH, SEPARATE DISTINCT AND AFFIRMATIVE**

23  **DEFENSE, DEFENDANTS ALLEGE:**

24  That the complaint is barred by the doctrine of unjust enrichment.

25  **AND AS FOR A THIRTEENTH, SEPARATE DISTINCT AND AFFIRMATIVE**

26  **DEFENSE, DEFENDANTS ALLEGE:**

27  That the complaint is barred by the doctrine of mistake pursuant to Civil Code section

28  1567, et seq.

Sedgwick LLP

-3-

**ANSWER TO SECOND AMENDED COMPLAINT**

1    **AND AS FOR A FOURTEENTH, SEPARATE DISTINCT AND AFFIRMATIVE**

2    **DEFENSE, DEFENDANTS ALLEGE:**

3        That the complaint is barred by the doctrine of partial performance.

4    **AND AS FOR A FIFTEENTH, SEPARATE DISTINCT AND AFFIRMATIVE**

5    **DEFENSE, DEFENDANTS ALLEGE:**

6        That the complaint is barred by the doctrine of substantial performance.

7    **AND AS FOR AN SIXTEENTH, SEPARATE DISTINCT AND AFFIRMATIVE**

8    **DEFENSE, DEFENDANTS ALLEGE:**

9        That the complaint is barred by the doctrine of impossibility or impracticality of

10   performance pursuant to Civil Code Sections 1441, 1511, 1595, 1596, and/or 1597.

11   **AND AS FOR A SEVENTEENTH, SEPARATE DISTINCT AND AFFIRMATIVE**

12   **DEFENSE, DEFENDANTS ALLEGE:**

13       That the complaint is barred by delay attributable to plaintiff.

14   **AND AS FOR A EIGHTEENTH, SEPARATE DISTINCT AND AFFIRMATIVE**

15   **DEFENSE, DEFENDANTS ALLEGE:**

16       That plaintiff's damages, if any, are uncertain and therefore barred by Civil Code Section

17   3301.

18   **AND AS FOR A NINETEENTH, SEPARATE DISTINCT AND AFFIRMATIVE**

19   **DEFENSE, DEFENDANTS ALLEGE:**

20       That plaintiff is not in privity of contract.

21   **AND AS FOR A TWENTIETH, SEPARATE DISTINCT AND AFFIRMATIVE**

22   **DEFENSE, DEFENDANTS ALLEGE:**

23       That the complaint is barred by the doctrine of novation pursuant to Civil Code Sections

24   1530-1532.

25   **AND AS FOR A TWENTY-FIRST, SEPARATE DISTINCT AND AFFIRMATIVE**

26   **DEFENSE, DEFENDANTS ALLEGE:**

27       That the complaint is barred by the doctrine of release pursuant to Civil Code section

28   1541.

1    **AND AS FOR A TWENTY-SECOND, SEPARATE DISTINCT AND**

2    **AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

3    That the complaint is barred by the doctrine of accord and satisfaction pursuant to Civil

4    Code section 1521.

5    **AND AS FOR A TWENTY-THIRD, SEPARATE DISTINCT AND**

6    **AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

7    That the complaint is barred by the doctrine of account stated.

8    **AND AS FOR A TWENTY-FOURTH, SEPARATE DISTINCT AND**

9    **AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

10    That the defendants are not legally responsible for the acts, omissions, and/or obligations

11    of RC VENTURES, LLC, RC VENTURES GROUP II, LLC, and/or MARI #1, LLC, because

12    each such entity is separate and distinct from its individual shareholders and defendants are not

13    the alter egos of such entities.

14    **AND AS FOR A TWENTY-FIFTH, SEPARATE DISTINCT AND AFFIRMATIVE**

15    **DEFENSE, DEFENDANTS ALLEGE:**

16    The Complaint is barred by Probate Code §§ 16002, 16244, 16245, 16246, 19402, 19326

17    and 19402 as the liability does not exceed the value of the distribution.

18    **AND AS FOR A TWENTY-SIXTH, SEPARATE DISTINCT AND AFFIRMATIVE**

19    **DEFENSE, DEFENDANTS ALLEGE:**

20    The Complaint is barred by Probate Code § 19326 in that plaintiff is not an intended

21    beneficiary of the estate of Revels M. Cayton.

22    **AND AS FOR A TWENTY-SEVENTH, SEPARATE DISTINCT AND**

23    **AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

24    The claim for damages is barred by the Uniform Voidable Transaction Act pursuant to

25    C.C. § 3439.01, et seq.

26    **AND AS FOR A TWENTY-EIGHTH, SEPARATE DISTINCT AND**

27    **AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

28

1    Plaintiff's damages, if any, are limited by the Aircraft Security Agreement, a true and

2  correct copy of which is attached hereto as Exhibit A and incorporated herein by this reference

3  and resulting aircraft lien.

4    **AND   AS   FOR   A   TWENTY-NINTH,   SEPARATE   DISTINCT   AND**

5  **AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

6    The Complaint is barred by the doctrine of unclean hands.

7    **AND AS FOR A THIRTIETH, SEPARATE DISTINCT AND AFFIRMATIVE**

8  **DEFENSE, DEFENDANTS ALLEGE:**

9    The Complaint fails to state a claim for which punitive damages may be awarded.

10    **AND AS FOR A THIRTY-FIRST, SEPARATE DISTINCT AND AFFIRMATIVE**

11  **DEFENSE, DEFENDANTS ALLEGE:**

12    That plaintiff's complaint to the extent that it seeks exemplary or punitive damages

13  pursuant to California Civil Code Section 3294, violates defendants' right to procedural due

14  process under the Fourteenth Amendment of the United States Constitution, and Article I,

15  Section 7 of the Constitution of the State of California, and therefore fails to state a cause of

16  action upon which either punitive or exemplary damages can be awarded.

17    **AND   AS   FOR   A   THIRTY-SECOND,   SEPARATE   DISTINCT   AND**

18  **AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

19    That said complaint, to the extent that it seeks punitive or exemplary damages pursuant to

20  California Civil Code Section 3294, violates defendant's right to protection from "excessive

21  fines" as provided in the Eighth Amendment of the United States Constitution and Article I,

22  Section 17 of the Constitution of the State of California, and violates defendant's right to

23  substantive due process as provided in the Fifth and Fourteenth Amendments of the United

24  States Constitution and the Constitution of the State of California, and therefore fails to state a

25  cause of action supporting the punitive or exemplary damages claimed.

26    **AND AS FOR A THIRTY-THIRD, SEPARATE DISTINCT AND AFFIRMATIVE**

27  **DEFENSE, DEFENDANTS ALLEGE:**

28

**ANSWER TO SECOND AMENDED COMPLAINT**

83691614v1

Sedgwick

1    The transfer made to defendant which is alleged to be in fraud of plaintiff's rights was

2    made in good faith and for reasonable value.

3    **AND AS FOR A THIRTY-FOURTH, SEPARATE DISTINCT AND**

4    **AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

5    The Complaint is barred by the doctrine of dominion and control in that the defendant

6    lacked control of the assets allegedly transferred.

7    **AND AS FOR A THIRTY-FIFTH, SEPARATE DISTINCT AND AFFIRMATIVE**

8    **DEFENSE, DEFENDANTS ALLEGE:**

9    The Complaint is barred by Civil Code sections 2223, 2224, and 2224.5.

10                                    **PRAYER**

11   **WHEREFORE,** Defendants respectfully pray:

12       1.    That plaintiff take nothing by way of the complaint;

13       2.    A dismissal of the complaint with prejudice;

14       3.    An award of reasonable attorneys' fees to the extent permitted by law;

15       4.    Costs of suit according to proof herein; and

16       5.    Such other and further relief, either legal or equitable, as the Court may

17             deem proper.

18   DATED: August 25, 2016            SEDGWICK LLP

19

20                                     By: _____
21                                        EUGENE BROWN, JR., ESQ.
                                          AMEE A. MIKACICH, ESQ.
22                                        SUNNY S. SHAPIRO, ESQ.
                                          Attorneys for Defendants
23                                        MARI SUSANNA DEMARSH, an individual;
                                          MARI SUSANNA DEMARSH, as the Special
24                                        Administrator and Executor of the ESTATE OF
                                          REVELS MICHAEL CAYTON, erroneously sued
25                                        as MICHAEL REVELS CAYTON; MARKOU,
                                          LLC; and MARI SUSANNA DEMARSH as the
26                                        Trustee of the REVELS MICHAEL CAYTON
                                          TRUST, Dated August 4, 2014
27

28

83691614v1                                    -7-
                          **ANSWER TO SECOND AMENDED COMPLAINT**

# EXHIBIT A

Above space for FAA Use Only

---

BATTLE CREEK STATE BANK (NEBRASKA)
P.O. Box 308
Battle Creek, NE 68715

AIRCRAFT SECURITY AGREEMENT

THIS AIRCRAFT SECURITY AGREEMENT (the "Agreement"), is made on this 26th day of **September, 2007** by **RC Ventures, LLC,** whose respective address(es) are as set forth beneath their respective signatures at the end of this Agreement ("Debtor") in favor of BATTLE CREEK STATE BANK (NEBRASKA), P.O. Box 308, Battle Creek, NE 68715 ("Bank").

RECITALS:

(A) The Note. Debtor is indebted to Bank under a certain aircraft commercial note (the "Note") that is further described in a Closing Statement and Pay Proceeds Letter.

(B) What is Secured. This Agreement secures the payment of: (1) the Note; (2) all costs and expenses incurred in the collection and enforcement of Bank's rights under the Note and this Agreement (collectively, the "Loan Documents"); (3) all future advances made by Bank for taxes, levies, insurance and repairs to or maintenance of the Aircraft; (4) all money advanced by Bank to fund the loan to or for the account of Debtor or the future obligations of Debtor under the Note and any advances by Bank to preserve its interests under this Agreement; and (5) interest on any such Bank advances as may be payable to Bank (collectively, the "Obligations").

(C) Consideration. The consideration for the Note and this Agreement is the disbursement of the proceeds of the loan shown in the Note pursuant to the Closing Statement and Pay Proceeds Letter. To the extent that a certificate of deposit, bank account or investment securities are pledged with Bank as additional collateral, a separate security agreement will be used for such items.

(D) (1) The Collateral. Bank's collateral (sometimes collectively called "Collateral") will be a security interest ("Security Interest") in the aircraft described below (the "Aircraft") and in any engines, motors, propellers, avionics, logbooks and other records, appliances, appurtenances, attachments, parts and equipment now forming part of the Aircraft or added to it later or, if not a part of, used in connection with the Aircraft. Substitutions, replacements and insurance proceeds will also be part of the Collateral. If Debtor leases or rents the Aircraft, Bank's Security Interest will extend to all rent due or to become due to Debtor from lease or rental use of the Aircraft. At Bank's request, Debtor will sign a more detailed written pledge or assignment of such rentals. If the primary use of the Aircraft changes from use by Debtor in Debtor's own business to lease or rental to others, Debtor must first notify Bank in writing and receive Bank's written approval. If execution of this Agreement was a condition of approving lease or rental as the primary use of the Aircraft, this Agreement shall supersede any prior security agreement covering the Aircraft in favor of Bank. Any commercial guaranty, letter of credit or other commercial security given by any person to Bank as security for the specific Obligations of Debtor under the Note or this Agreement or for other commercial obligations of Debtor generally shall also be deemed to be Collateral for this loan. Debtor understands that Bank will treat this loan as a commercial loan from the inception of the loan, even if Debtor's use of the Aircraft changes from business to personal recreational use after the closing.

(2) Additional Collateral. (Describe, if any, but if space is inadequate, list on Schedule A hereto):

---
---

(E) Perfection of Security Interest. (1) Federal. Bank will perfect its Security Interest in the Aircraft and any engines having a rated horsepower of 750 or more and all items now or hereafter forming part of the Aircraft by filing this Agreement with the Federal Aviation Administration ("FAA"). If spare parts may be covered by an FAA filing of this Agreement, they also will be deemed covered thereby if set aside for the Aircraft. If spare parts cannot be so covered, they are covered by subsection (2) below.

(2) State. Bank may perfect its Security Interest in any logbooks, engines having a rated horsepower of less than 750, parts identified for use on the Aircraft, and any other Collateral not covered by (E)(1) above by filing UCC-1 Financing Statement(s) with the appropriate filing offices.

(E) No Sale of Aircraft. Until the Note is satisfied, Debtor will not sell or dispose of the Aircraft or of any fractional or other interest in the Aircraft.

(F) No Other Security Interests. Debtor will not give anyone other than Bank a security interest in the Aircraft.

(G) No Liens or Encumbrances. Debtor will not allow any liens or encumbrances to exist against the Aircraft and will promptly satisfy and remove any liens or encumbrances on a public record against the Aircraft or of which Debtor otherwise becomes aware.

(H) No Lease or Rental of Aircraft. The Aircraft will not be leased or rented without the prior written approval of Bank. Such approval is required irrespective of who provides the pilot. The lease or rental plan must also be approved in writing by Debtor's Aircraft insurer. Renting may require a different maintenance program under federal law and higher premium cost on Debtor's Aircraft insurance. Renting to or through a third party, such as a flight training school or a cargo or passenger charter service, also requires prior written approval of Bank and insurer.

(I) Home Base. The Aircraft will be kept at the home airport shown in Section 2 of this Agreement. Debtor must notify Bank and Debtor's Aircraft insurer if Debtor is going to change the principal base for the Aircraft. No permanent change shall be made without the prior written consent of Bank and the Aircraft's insurer.

(J) Maintenance.

    **(v)**    FAA Requirements. Maintenance of the Aircraft is Debtor's responsibility. Debtor must comply with all FAA maintenance and repair directives that apply to Debtor's use of the Aircraft. Any change of use may cause more demanding maintenance directives to apply, e.g. if the Aircraft is leased or rented out.

    **(vi)**    Bank Requirements. Bank may require, and Debtor shall provide, a pre-purchase inspection by a FAA-certified mechanic. Debtor is also responsible for ensuring that the Aircraft at all times meets FAA minimum standards and shall provide all other necessary maintenance during the loan term, including maintaining the hull and all systems in good working order, in order to maintain the value of the Collateral. If required by Bank, Debtor will enroll the Aircraft in a manufacturer or other reasonably acceptable maintenance tracking program.

    **(vii)**    Exceptions. The only exceptions to J(i) and (ii) above are for features of the Aircraft that are to be repaired or overhauled after this loan closes and which are noted in Bank's commitment letter to make this loan or on the related Closing Statement and Pay Proceeds Letter. Such repairs or equipment replacement must be completed within the time specified in the Closing Statement and Pay Proceeds Letter.

    **(viii)**    Worn-out Items. Items material to safety or the value of the Aircraft that wear out over the course of this loan must be replaced before they become a flight risk, or if not a flight risk, within a reasonable time after they wear out, unless otherwise agreed by Bank, so as to maintain as nearly as possible the collateral value of the Aircraft.

(K) Registration. The Aircraft will at all times be registered with the FAA in Debtor's name for the use to which it is being put and which has been approved by Bank and Debtor's Aircraft insurer.

(L) Taxes, Fees, Assessments and Charges. Debtor will pay all taxes, assessments and charges imposed on the Aircraft by any national, state, county or municipal taxing authority or fees of a public or other airport authority. For example, and without limitation, Debtor will pay for any fees imposed on the Aircraft for landing and storage.

(M) Insurance. (i) Kinds of Coverage. If required by Bank or applicable law, Debtor shall obtain and maintain (i) public liability insurance (including, without limitation, passenger liability and property damage insurance) with Bank named as additional insured to the extent permitted by applicable law, (ii) all risk aircraft ground and flight hull insurance, fire and extended coverage insurance against all risks of physical damage to or loss of the Aircraft, whether or not such loss occurs in flight, and (iii) such other insurance as Bank may reasonably request. The insurer must be qualified to write such insurance in the state where the Aircraft will be permanently based. Debtor may select the carrier or agent subject to the reasonable approval of Bank. Any carrier must be amenable to service of process in the continental United States, unless otherwise agreed in writing by Bank.

(ii) Loss Payable Clause; Breach of Warranty Endorsement. The policy covering physical damage to or loss of the Aircraft shall contain a loss payable clause in favor of Bank, as interests may appear. The insurance policies shall contain breach of warranty

endorsements protecting Bank, even if Debtor violates one or more provisions of the policies. While breach of warranty coverage may protect Bank, Debtor's breach of any warranties to the insurer may result in the insurer paying Bank and suing Debtor for the loss. For this reason, Debtor must be familiar with Debtor's policy of insurance and make certain that adequate breach of warranty coverage is obtained. In addition, if Debtor rents out the Aircraft and does not have breach of warranty coverage for Debtor or have the rentee provide breach of warranty coverage for Debtor, Debtor's insurer can pay Bank if the rentee breaches a policy warranty and sue Debtor for the loss leaving Debtor without coverage.

(iii) Notice of Cancellation. The insurance policies shall provide for at least thirty (30) days prior written notice of cancellation to Bank.

(iv) Bank's Power to Collect Proceeds. Debtor, as principal, hereby appoints Bank as Debtor's attorney-in-fact with all power and authority necessary for Bank in case of an insurance claim to obtain, adjust, settle and cancel such insurance and endorse any loss payment or refund checks, drafts or instruments. Bank may apply the proceeds of any such insurance to the balance owing, whether or not due at the time of such application, and pay any excess proceeds to Debtor. In case of loss or damage to the Aircraft, Bank may intervene in any action between Debtor and any third party, including Debtor's Aircraft insurer, and Debtor agrees to cooperate with Bank in obtaining payment of Bank's interest.

(v) Amounts of Coverage. The amount of all-risk property coverage for damage to the Aircraft shall be at least equal to the lesser of the then outstanding balance of the Note or the actual value of the Aircraft. The amount of public liability insurance shall be within limits commonly carried for aircraft of the size and type of the Aircraft for its permitted use(s).

(vi) Aircraft Usage. Any application for insurance shall be consistent with the use or uses allowed under the Loan Documents. Debtor must deliver the Aircraft insurance policies or a binder which describes the permitted uses and coverage amounts prior to funding by Bank. Any renewals of insurance or applications for insurance to a new carrier must likewise be consistent with the use(s) permitted under the Loan Documents. No request for lease or rental of the Aircraft will be considered by Bank, unless such use is specifically listed on the Declaration Sheet of the policy or in an endorsement or a binder. Bank may also insist on seeing a copy of the lessee's or rentee's insurance coverage, which must be acceptable to Bank, before approval of such lease or rental.

(vii) Debtor's Failure to Insure. In the event Debtor fails to furnish required insurance, Bank may purchase separate individual replacement hull physical damage insurance and, if necessary, public liability insurance and charge Debtor for the premium or rely on Bank's floater policy and not charge Debtor for any part of the floater premium. However, in the latter case, Bank's floater policy carrier may pay Bank and sue Debtor for any loss. If Bank buys separate insurance to be charged to Debtor, Debtor shall be entitled to all notice, cure and refund rights under applicable law. NOTE: In no case will Bank cover Debtor for public liability coverage for Debtor's use of the Aircraft. Such insurance can be obtained only by Debtor or a third party for such party's use or the use of a rentee arranged by such third party. If Debtor fails to furnish insurance as required, Bank will notify Debtor if any replacement insurance is to be added to the balance of the debt required to be paid.

**34.** TIMELY PERFORMANCE. Debtor must pay and perform on time.

**35.** SEIZURE. If the Aircraft is seized by law enforcement authorities for carrying contraband or other involvement in a crime or because the pilot was flying under the influence of alcohol, drugs or other illegal substance, Bank may take possession of the Aircraft from the seizing authority. If the seizing authority is a federal agency which is not able to prove within the federally-required time that Debtor was involved or informed of the unlawful use, Bank will surrender the Aircraft to Debtor at Debtor's request, if such activity is the only then current default. If the seizing authority is a state or local agency under the rules of which Debtor must prove Debtor's non-involvement in the alleged unlawful activity, Bank will return the Aircraft to Debtor when Debtor has established Debtor's non-involvement or been declared a victim by the seizing agency. If a seizing state or local authority has the right to forfeit the Aircraft, irrespective of proof of Debtor's involvement/ non-involvement, Bank may elect to pay such release amount as the seizing authority may demand and obtain possession of the Aircraft or abandon its rights to the Aircraft and hold Debtor liable for the then balance of Debtor's Obligations. In any event, Debtor shall be responsible for all of Bank's reasonable expenses in investigating the seizure, obtaining possession of the Aircraft and storing and maintaining it pending a resolution of the dispute, if Bank provides such services.

**36.** DEFAULT. Debtor will be in default under this Agreement if any of the following happens: (a) Debtor fails to pay Bank any Obligations under the Loan Documents when due; (b) a material fact stated or omitted by Debtor in Debtor's credit application or the Loan Documents or in any financial statement given to Bank to obtain credit or subsequently given to Bank hereunder is untrue or tends to make such document misleading; (c) Debtor fails to perform an act specifically required by the Loan Documents, such as (without limitation) providing required insurance, inspection, maintenance and repair, or there is otherwise a

default under any of the Loan Documents; (d) a petition in bankruptcy or under any other insolvency, arrangement, reorganization or receivership law is filed by or against Debtor or Debtor enters into an assignment for the benefit of creditors; (e) the Aircraft is seized by a government authority and Bank's security position is in jeopardy; (f) Debtor liquidates, dissolves, or otherwise ceases doing business or allows its corporate or company charter to transact business to lapse; or (g) anything else happens that Bank in good faith may decide impairs its security in the Collateral for this loan or Debtor's ability to pay and perform the loan, such as a garnishment, writ of attachment or execution against any property of Debtor or any guarantor, levy being issued against funds or property of Debtor or any guarantor, or a material adverse change in the financial condition of Borrower or any guarantor.

**37.** REMEDIES. In the event of a default under Section 12, above, (a) Declare Obligations Due. Bank, at its option, may declare all or any part of the Obligations immediately due and payable in full, subject to any cure rights which Debtor may have in the state where this remedy is being used. If cure rights exist, Bank will notify Debtor of such rights, as required by applicable law.

(b) Other Remedies. Subject to applicable law of the state where a remedy is being used, Bank may use any or all of the following additional remedies:

(i) Require Debtor to make the Aircraft available and assemble all related Collateral used in or with the Aircraft, including updated logbooks, at an airbase selected by Bank which is secure and reasonably convenient to both Debtor and Bank. The base designated as the principal location of the Aircraft will suffice, unless such airbase is not at that time a secure place in Bank's reasonable opinion to store the Aircraft.

(ii) Take possession of the Collateral with or without judicial process and remove it or make it unusable.

(iii) Sell or otherwise dispose of the Collateral AS-IS WHERE-IS by public or private sale on the premises where the Collateral is located or elsewhere, if Bank elects to remove the Aircraft or related additional Collateral.

(iv) Collect any money due from third parties for use of or damage to the Collateral.

(v) Settle any liens or claims against the Collateral for storage, maintenance, repair, tax or other appropriate charge.

(vi) Exercise all remedies provided for in the Note.

(vii) If Bank elects to purchase insurance and charge it to Debtor, Debtor will pay for the reasonable cost of such insurance.

(viii) If Bank determines that the market for resale of the Aircraft is not favorable, Bank may elect to retain the Aircraft and waive any deficiency or accept a lesser deficiency. In lieu of resale, if allowed by applicable law. In such case, Bank will give Debtor any special written notice required by law, but in any event not less than 21 days notice.

(ix) If Bank elects to resell the Aircraft and related Collateral, Bank will give Debtor the notice and cure rights required in the state where the resale is to take place, but in any event not less than 10 days' notice.

(x) Bank will advise Debtor in its Notice of Resale how Bank plans to advertise the resale and what kind of repair, maintenance or make ready service it will perform prior to offering the Aircraft for resale. If Debtor requests additional resale preparation, Debtor will have to deposit full payment for such service with Bank in advance of the commencement of such work. Bank will decide whether to allow such additional work based on whether the value of such additional work is likely to add to the net resale value of the Aircraft. Any notice to be given following repossession by Bank to Debtor or other parties who sign this Agreement or the Note must be sent by ordinary mail, postage prepaid to the last address(es) Bank has for Debtor and any other obligor on the loan. If Bank elects to send any such notices by additional methods, such as certified mail, return receipt requested, or overnight courier, Debtor will be liable for the cost of such notices as well as for the cost of ordinary mail.

(c) Personal Property. (i) Removal Before Voluntary Surrender. Before voluntary surrender of the Aircraft to Bank, Debtor will remove all items of personal property not covered by Recital (D)(1) or (2) and, at Bank's request, will sign a statement acknowledging such removal by Debtor. (ii) Involuntary Repossession. If Bank repossesses the Aircraft, it will use its best efforts to identify any items of personal property left on or around the Aircraft and tell how Debtor may claim such property. If Debtor, within 45 days after Bank sends such notice, does not physically pick up such items or provide a representative with apparent authority verifiable by Bank to call for such items or provide a prepaid and addressed shipping container for Bank to use to return such items to Debtor, Bank may store such items at Debtor's expense, send them by overnight courier to Debtor and charge Debtor for the cost, or dispose of such items in any way allowed by law.

(d) Annual Inspection After Repossession. If, while the Aircraft is being held by Bank pending disposition, the time for an FAA-mandated annual inspection arrives, Bank will consider arranging for the inspection to be made by an FAA-certified mechanic experienced in inspecting, maintaining and repairing similar aircraft, if Debtor deposits with Bank in advance the cost of the inspection. In such case Bank will proceed with repairs indicated by the inspection report to be made by another FAA-certified mechanic, provided Debtor deposits the money with Bank for the repairs in advance. Bank may elect not to make any further repairs if Bank reasonably believes that the cost of such repairs will outweigh the added value of the repairs.

(e) Expenses. Debtor shall be liable for and agrees to pay the reasonable expenses incurred by Bank in retaking, flying to a secure airport, storing, inspecting, testing, repairing, improving and reselling the Aircraft and any other Collateral. Debtor shall also be responsible for Bank's court costs and reasonable fees for any attorney not a salaried employee of Bank, if Bank refers this loan for any court or other action to retake possession from Debtor or any third party or for collection of money. These expenses, together with interest, shall, if allowable under applicable law, be added to Debtor's Obligations secured by this Agreement.

(f) Application of Proceeds. Any resale proceeds shall be applied first to the expenses of resale, then to the other expenses in 13(e) above, then to late charges, then to accrued and unpaid interest and then to the unpaid principal balance of the Note.

(g) Surplus. Any excess of net resale proceeds over then remaining Obligations shall be paid to Debtor.

(h) Deficiency. Any deficiency balance still owing after application of net resale proceeds shall be paid by Debtor on demand, unless Debtor has a right to reschedule some or all of the balance under applicable law.

(i) Remedies Cumulative, Non-Waiver. Bank may use any remedy or remedies singly or together. Use of one remedy does not stop Bank from using one or more other remedies. Waiver of a remedy on one occasion does not mean that the remedy is waived on another subsequent default.

(j) Surrender of Aircraft Not A Waiver by Itself. Surrender of the Aircraft by Debtor shall not release Debtor or any other party liable for the Debtor's Obligations or who joined in granting a security interest in any Collateral for this loan.

**38.** GOVERNING LAW. (a) Validity. Except as provided below or as otherwise required by applicable law, the law of Nebraska shall govern the validity of this Agreement, without regard to Nebraska's conflict of law principles.

(b) Federal Perfection. Federal law shall govern the perfection of a security interest in the Aircraft and any engine(s) or parts that the federal filing will cover.

(c) Remedies. The law governing the use of any remedy under this Agreement shall be the law of the place where the remedy is to be used.

**39.** DEBTOR RESIDENCES, AIRCRAFT LOCATION. Debtor must notify Bank if any individual Debtor or any other owner of the Aircraft is about to permanently change residence or principal place of business address. Debtor must also notify Bank in advance of any change of name of Debtor, and, in case of a Debtor which is not an individual, any change of name of Debtor or change in state of incorporation or formation of Debtor. A change to another state or to a country or territory outside of the continental United States requires 30 days' prior written notice. Other address changes require at least 15 days' prior written notice. If there is more than one owner and each is moving, Debtor must inform Bank of each change of address. Debtor must also notify Bank if the permanent base of the Aircraft is to change. A copy of Debtor's notice must also be sent by Debtor to Debtor's Aircraft insurer.

**40.** JOINT AND SEVERAL RESPONSIBILITY. If this Agreement is executed by more than one Debtor, the obligations of all such Debtors under this Agreement shall be joint and several, except for the obligations of a party signing only as Other Owner to join in granting a Security Interest under Section 4 of this Agreement.

**41.** SEVERABILITY. Invalidity of any provision shall not affect any other provision of this Agreement.

**42.** INDEMNITY. Should any third party make a claim against Bank for any harm from the Aircraft, attributable to Debtor or any third party, and not directly caused or ordered by Bank or its agents, Debtor will promptly either satisfy or settle such claims or indemnify and hold Bank harmless from any liability for such claims, including attorneys' fees and court costs. If Debtor cannot give Bank reasonable assurance of Debtor's ability and resources to defend against any such claim, Bank may control the defense and settle the claim giving such releases as it deems appropriate.

**43.** AMENDMENTS. Neither this Agreement nor any of its provisions may be changed, waived or discharged orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver or discharge is sought.

**44.** RESCUE. Should the Aircraft at any time be at risk of loss, such as on notice of approaching storm or flood conditions, Debtor shall take all reasonable steps to preserve and safeguard the Aircraft or authorize the airbase operator with which it is stored to do so. In particular, Debtor shall comply with all conditions of its Aircraft insurance policy relative to insured perils.

**45.** NOTICES. Except as otherwise provided by applicable law, any notice or demand given by Bank to Debtor in connection with this Agreement or the Obligations shall be deemed given and effective upon deposit in the United States mail, postage prepaid,

addressed to Debtor at the address of Debtor designated at the beginning of this Agreement and to any other party to this Agreement at such party's last address possessed by Bank. Actual notice of Debtor shall always be effective no matter how given or received.

46. BOOKS AND RECORDS. Debtor shall keep books and records showing the income and expenses of the business and records of each flight by the Aircraft as well as maintenance and repair records required to be documented in the Aircraft's logbook(s). Debtor shall obtain and retain all bills for equipment, service, parts, fuel, or other supplies for the Aircraft and proof of payment, whether by check or other medium. Such records shall be available for inspection by Bank on reasonable notice at the principal airbase of the Aircraft or at a reasonably convenient business office of Debtor or Bank at reasonable time(s).

47. HEADINGS. Section headings in this Agreement are for convenience only and shall be given no meaning or significance in interpreting this Agreement.

48. BINDING EFFECT. The provisions of this Agreement shall be binding upon the legal representatives, successors and assigns of Debtor and Bank's successors and assigns shall have the rights and remedies of Bank under this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first above written and Debtor acknowledges receipt of two completed copies of this Agreement, one to return to Bank and one to retain.

Debtor : RC Ventures, LLC

By: Revels Cayton
Title: Member

Debtor's Address: 234 Curry Ln
                  Sausalito, CA 94965

WITNESS AS TO Signatures of : Debtor  : Co-Borrower  : Other Owner (check applicable boxes)

_____
(Signature)

Witness Name (Printed): _____

```
STATE OF _____ COUNTY OF_____
SIGNED AND SWORN TO (OR AFFIRMED) BEFORE ME
ON_____ BY _____
My commission expires _____
NOTARY PUBLIC _____
```

Anyone signing as Other Owner immediately above is not responsible for repaying the debt secured but joins in giving Bank a Security Interest in the Aircraft and to the extent applicable, in any non-aircraft Collateral

COUNTERPART NOTICE: This Agreement is signed in 2 counterparts. This copy is Counterpart #_____. Only Counterpart #1 may be used to give anyone Bank's rights under or a Security Interest in this Agree

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California }

County of ___Marin___

On ___September 22nd 2008___ before me, ___Ann Wairimu Munene Notary Public___
<span>Date</span>                                Here Insert Name and Title of the Officer

personally appeared ___Kevin Gation___
                                              Name(s) of Signer(s)

ANN WAIRIMU MUNENE
Commission # 1554626
Notary Public - California
Marin County
My Comm. Expires Feb 22, 2009

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                                      Signature of Notary Public

Place Notary Seal Above

--- **OPTIONAL** ---
Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.

## Description of Attached Document

Title or Type of Document: ___Aircraft Security Agreement___

Document Date: ___September 26th 2007___          Number of Pages: ___1___

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

©2007 National Notary Association • 5350 De Soto Ave., P.O.Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to

the within action.  My business address is Sedgwick LLP, 333 Bush Street, 30th  Floor,

San Francisco, CA  94104.  On August 25, 2016, I served the within document(s):

### ANSWER TO SECOND AMENDED COMPLAINT

☐    FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

☑    MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐    PERSONAL SERVICE – by causing personal delivery of the document(s) listed above to the person(s) at the address(es) set forth below.

☐    OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via Federal Express.

| | |
|---|---|
| Ralph J. Swanson, Esq.<br>Dawn C. Sweatt, Esq.<br>BERLINER COHEN<br>10 Almaden Boulevard, 11th Floor<br>San Jose, CA  95113-2233 | Attorneys for Plaintiff BATTLE CREEK STATE BANK<br><br>Tel:  (408) 286-5800 / Fax:  (408) 998-5388<br>ralph.swanson@berliner.com;<br>dawn.sweatt@berliner.com |
| Thomas J. Holthus, Esq.<br>Julie E. Corriveau, Esq.<br>McCARTHY HOLTHUS LLP<br>1770 4th Avenue<br>San Diego, CA  92101 | Attorneys for Plaintiff BATTLE CREEK STATE BANK<br>Tel:  (619) 916-3419 / Fax:  (619) 685-4811<br>tholthus@mccarthy-holthus.com;<br>jcorriveau@mccarthyholthus.com |

I am readily familiar with the firm's practice of collection and processing correspondence

for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same

day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on

motion of the party served, service is presumed invalid if postal cancellation date or postage meter

date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is

true and correct.  Executed on August 25, 2016 at San Francisco, California.

*Marlene Adelman*
Marlene Adelman

Sedgwick LLP

82893938v1